No. 25,059.

ANNA TIERNEY, as guardian and next friend of THOMAS B. TIERNEY, a minor, *Appellee,* v. SOUTHWESTERN BELL TELEPHONE COMPANY, *Appellant.*

SYLLABUS BY THE COURT.

1. COMPENSATION ACT—*Workman Injured While in Employ of Telephone Company—Accident Arose Out of and in Course of His Employment.* A workman employed by a telephone company to go from place to place to charge the batteries at its various telephone exchanges and who was occasionally detailed to assist its telephone linemen in locating interference on its wires on the highway, and who while so engaged broke his arm while cranking an automobile on the public highway, which automobile was being used for hauling telephone repair tools and to transport the plaintiff and another workman, has a valid claim on his employer for compensation, such accident and injury having arisen out of and in the course of his employment within the meaning of the Workmen's Compensation Act.

2. SAME—*A Public Highway Along Which Telephone Wires Are Strung is Within the Danger Zone of the Company's Employees.* A public highway

Tierney v. Telephone Co.

along which telephone wires are strung is within the zone of danger to the telephone company's employees whose duties require them to travel on such highway to inspect the wires and to hunt for and correct wire interference.

3. SAME—*Injury Incidental to Workman's Employment.* Where by statute an employment is declared to be hazardous and compensation is allowed for all injuries sustained by workmen engaged in such employment, with or without their fault and with or without any fault of the employer, it does not defeat an injured workman's claim to compensation that his particular injury was not caused by some hazard peculiar to such employment; it is sufficient if it was incidental to such employment.

4. SAME—*Arbitration—No Prejudicial Error in Proceedings Before Arbitrator.* The scope of an arbitrator's functions, where appointment of an arbitrator was resisted, considered, but no error prejudicial to defendant discerned in the appointment of the arbitrator herein, nor in the matters referred to him.

Appeal from Crawford district court, division No. 2; GEORGE F. BEEZLEY, judge. Opinion filed November 10, 1923. Affirmed.

*C. J. Evans, Davis E. Palmer,* both of Topeka, and *John P. Curran,* of Pittsburg, for the appellant. *J. W. Gleed,* of Topeka, and *Claude Nowlin,* of St. Louis, Mo., of counsel.

*F. B. Wheeler, R. L. Robertson,* and *Sylvan Bruner,* all of Pittsburg, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This is an appeal from a judgment awarding compensation to a workman injured in the service of the defendant telephone company.

The plaintiff, a youth of seventeen years, was employed by the defendant. His ordinary duties were the charging of batteries in defendant's telephone exchanges in the villages of Crawford county. On a few occasions he had been detailed to hang loose wires in an office and to assist a telephone line repair man. He resided at Pittsburg, and in going to the villages nearby in the discharge of his duties he sometimes traveled on the interurban railway and sometimes rode with defendant's linemen in an automobile. One morning in July, 1922, he was directed by his superior officer to go to Weir City to charge the batteries at the central exchange, and was told that a lineman was going to Weir City in defendant's automobile and that plaintiff should ride with him. The lineman was making the journey to examine the telephone lines along the highway to locate some wire interference which was causing trouble in the telephone service. Plaintiff was directed by his superior officer

to render assistance to the lineman. On this journey the lineman and plaintiff halted at intervals, and the lineman would climb a telephone pole and make a test connection with some central exchange. Finding the connection satisfactory, they would continue their journey to some point further on and repeat the test. At one of such stops, the lineman made the test and finding the line free of trouble, he decided to make another test some distance away, and said to plaintiff: "You crank the car and turn it around and run it down and I will walk." Plaintiff started to obey and in cranking the car, it "kicked back" and broke his arm.

Compensation was demanded and refused; action was begun; an arbitrator was appointed over defendant's objections; findings and award allowed; and judgment was entered accordingly.

Defendant appeals, its main contention being that plaintiff's accident and injury and defendant's liability thereunder were not governed by the workmen's compensation act.

Defendant begins its argument with an analysis of those features of the act which deal with the appointment of an arbitrator and with the limited scope of the arbitrator's functions except where other matters are referred to him by consent of the parties or by order of court. But it will shorten our task, perhaps, to consider, first, whether the case was governed in any respect by the compensation act. The statute, in part, provides:

"This act shall apply only to employment . . . on, in or about a railway, factory, mine or quarry, electric, building or engineering work, . . . " Laws 1917, ch. 226, § 1.)

" 'Electrical work' means any kind of work in or directly connected with the construction, installation, operation, alteration, removal, or repair of wires, cables, switchboards or apparatus used for the transmission of electrical current, or operation of telegraph or telephone lines." (§ 2.)

Did not the plaintiff's employment fall within this classification? His principal duties were the charging of telephone batteries, but occasionally he was detailed to assist linemen in their work. When assisting linemen, his usual task was to hand them their tools, help string wires, and tie wax-pots on a rope. On the day of his injury he was assisting the lineman in locating wire interference on the public highway. The automobile was being used to transport the plaintiff and the lineman in the discharge of their duties and to carry the necessary tools. The car had to be stopped and it had to be cranked and started again as they went from place to place

along the highway making telephone tests. So it seems indisputable that when he broke his arm in cranking the car, to start it on the next lap of the journey, plaintiff was in his master's service, and that the accident arose out of and in the course of his employment.

But it is argued that he was not engaged in electrical work, wire repairing, or operating a telephone line, when the accident occurred —that he was merely cranking a Ford car, the hazard of which undertaking is the same in all walks of life, and not related in any way to the hazards of industrial accidents in the telephone business. The compensation act declares certain occupations to be hazardous and imposes a compensatory charge upon such business for injuries sustained by workmen engaged therein, with or without fault of employer or employee, where such injuries arise from the employment and because of it. The compensation thus allowed is not restricted to injuries which flow from the hazardous features of the employment, but to all injuries which are incidentally sustained in such employment, whether the injuries flow from some peculiar hazard of the business or not. Thus it was through no hazard peculiar to the business of a stockyard that a workman was injured by an electrical shock in passing through a door on the stockyard's premises, but compensation was allowed. (*White v. Stock Yards Co.,* 104 Kan. 90, 177 Pac. 522.) No hazard peculiar to the business of making boxes in a soap factory caused the injury to a young girl employee—she was hurt during the lunch hour while playing with other young workmates on a small truck, but compensation was awarded. (*Thomas v. Manufacturing Co.,* 104 Kan. 432, 179 Pac. 372.) An accident and consequent injury from starting a fire in a stove with kerosene is not one peculiar to the business of running a railway, but employment about a railway is properly classifiable as a hazardous business under the compensation act, and a railway station agent who was thus injured while lighting a fire was awarded compensation. (*Benson v. Railway Co.,* 104 Kan. 198, 178 Pac. 747.) Further illustrations are given in *Thompson v. Manufacturing Co.,* supra—

"A workman has been allowed to recover under the compensation act where he caused an explosion by lighting his pipe near a gasoline can in a tool house to which he had gone to eat his dinner, having violated no rule and not knowing of the presence of the vapor. (*Haller v. Lansing,* 195 Mich. 753.) In *Dzikowska v. Superior Steel Co.,* 103 Atl. 351 [Pa.], the employee was permitted to recover where he set fire to his oily apron while lighting a cigarette; and in *Whiting-Mead Commercial Co. v. Industrial Accident Co.,*

173 Pac. 1105 [Cal.], an employee's injury, due to his setting fire in the same way to a turpentine-soaked bandage on his hand, was held to fall within this rule." (p. 438.)

And so while cranking a Ford car by an employee of a telephone company is not a hazard peculiar to the telephone business, the telephone business is properly classifiable as a hazardous business, and is so classified and defined by the compensation act, and the relation of plaintiff and defendant was governed thereby.

But it is urged that the accident did not occur on, in or about defendant's electric work or telephone business—not within the zone of danger, but happened on the public highway. What is the zone of danger of a telephone business? A telephone business is not like a factory or mine which has a circumscribed and definite situs; a telephone business radiates its wires far and wide along the public highways of a township, county or state. But its employees in the discharge of their duties string the wires, inspect them, and repair them on the public highways, and they may get hurt in so doing, and may meet with accidents incidental thereto, so the court has no misgiving in holding that as to telephone-line employees, the zone of danger includes every place, including highways, where their duties reasonably require them to go, and thus construed the plaintiff's injury was sustained on, in and about premises occupied and used by the defendant in the pursuit of its business.

Another contention of defendant is that the district court had no power to appoint an arbitrator. But the statute is otherwise (Laws 1917, ch. 226, § 1), and it has been repeatedly held that appointment of an arbitrator is proper on the written application of one of the parties even where the other party objects to or ignores such appointment. (*Goodwin v. Packing Co.,* 104 Kan. 747, 180 Pac. 809; *Roper v. Hammer,* 106 Kan. 374, 378, 187 Pac. 858; *Wilson & Co. v. Ward,* 110 Kan. 177, 202 Pac. 862; *Cramer v. Railways Co.,* 112 Kan. 298, 302, 211 Pac. 118.)

In *Tidwell v. Schaff, Receiver,* 114 Kan. 255, 217 Pac. 302, the functions of the arbitrator, where arbitration is resisted, are delimited. It is there declared that either party as a matter of right may require an arbitrator to determine the character and quality of the workman's disability and the period through which payments are to be distributed. As to ordinary issues of controverted fact— whether plaintiff was in defendant's employment, whether he was injured in his employer's service, whether a settlement had been effected

and defendant thereby released from liability, whether there was fraud or mutual mistake in such settlement, and kindred questions such as may arise in any lawsuit—all these, of course, are triable before a jury or the court if either of the parties insist on their right thereto and have not theretofore agreed to or acquiesced in their reference to and determination by an arbitrator or shop committee.

But here, what issues of fact determinable by a jury as a matter of right were referred to the arbitrator? The questions which were formulated by the trial court were obviously its regular list prepared for use in ordinary cases referred to an arbitrator. We append this list with interpolated comment thereon:

"1. Whether or not an injury was incurred. [Admitted.]

"2. Whether or not it was an accidental injury. [Not in issue.]

"3. Whether or not it arose out of and in the course of the employment. [Controlling facts conceded in pleadings and argument, which made this question one of law.]

"4. Whether or not the employer or employee were under the compensation law, or either of them. [So declared by the statute.]

"5. Whether or not the injury is compensable. [Question obscure, but apparently one of law.]

"6. Extent and nature of the injury. [No issue raised on this question.]

"7. His earnings for the year next preceding his injury. [No issue here.]

"8. Whether or not a notice was served within ten days. [No issue here.]

"9. Whether or not demand for compensation was made within the statutory time. [No issue here.]

"10. What, if any, medical services, hospital and appliances were made to the plaintiff and date and amount of same. [No issue here.]

"11. Whether or not the same has been paid for and by whom. [No issue here.]

"12. What compensation, if any, is allowed. [Properly referred to arbitrator.]

"13. What period for which compensation is allowed. [Properly referred to arbitrator.]"

It thus clearly appears that while the stereotyped list of questions referred to the arbitrator do suggest issues of fact which ordinarily could not have been referred to him over defendant's objection, yet in this case there was no real contested issue of fact referred at all. Several of the questions are more in the nature of an outline of inquiry to guide the arbitrator to a comprehensive understanding of the vital matters referred to him—amount of compensation, character and quality of disability, and period for which compensation shall continue. (Laws 1917, ch. 226, § 11; *Tidwell v. Schaff*, supra.)

Summarizing: no real issue of controverted fact was submitted to the arbitrator; no real controverted issue of fact triable by a jury existed; no erroneous determination of any material matter by the arbitrator was presented to the trial court for correction; and no error to the prejudice of defendant is presented by the record, and the judgment must therefore be affirmed.

It is so ordered.