No. 29,095.

JAMES E. TAYLOR, *Appellee,* v. THE HOGAN MILLING COMPANY and THE ÆTNA LIFE INSURANCE COMPANY, *Appellants.*

(282 Pac. 729.)

Opinion filed December 7, 1929.

*W. H. Carpenter* and *W. R. Carpenter,* both of Marion, for the appellants.

*James V. Humphrey* and *Arthur S. Humphrey,* both of Junction City, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This action arose under the workmen's compensation law. James E. Taylor had been an employee of the Hogan Milling Company for a period of about eleven years. During his employment and on August 1, 1928, Taylor, while at work in the mill, applied for and was given permission by the foreman to go from the first to the fourth floor of the mill to pay a fellow employee a bill which he said he owed to him. In going there he used a man-lift, which was an endless belt revolving on pulleys, one at the top and another at the bottom, which had several steps about a foot wide and handholds attached to the belt. The belt revolved slowly and the employees wishing to use it entered upon one of the steps, caught the handhold and thus were carried up or down, leaving the man-lift on any floor where they had occasion to stop. There were openings in the floors and ceilings large enough to allow the man-lift to pass through them. In the building there were stairways that could be used. While using the man-lift on the occasion mentioned Taylor collided with some object and was severely injured. There is no controversy as to the extent of his injuries, nor that both parties were operating under the compensation law. The only question upon which the parties divide is, Did the injury arise out of and in the course of Taylor's employment? The trial court gave an affirmative answer to the question and rendered judgment accordingly. Defendant appeals.

It appears to have been the practice in the mill that employees should use the man-lift rather than the stairways, the purpose being the conservation of time and energy. It was also a rule of the company that employees should pay their bills when called upon by collectors and to do so out of the time of their employer. The president of the company testified that it was the policy of the company to insist upon employees paying their bills, and when collectors came to the mill to collect, employees should take time out to meet the collector, and that there was no deduction from their wages on that account, and that he had made a special point of this instruction. He also stated that the company had been annoyed by garnishments of employees and had found it necessary to insist that employees should pay their bills. The foreman testified that em-

ployees were instructed to meet their obligations and if they did not they would have to get other jobs, and if they did not have time of their own for attending to such matters, to take the time of the company for that purpose. As to the use of the man-lift, the foreman testified that the practice was for every employee to ride the lift for the sake of convenience, quickness and the saving of energy.

It is contended by defendant that in the use of the man-lift by the plaintiff, to go and pay a bill to an employee on the upper floor, he was not acting within the scope of his employment, but that the trip was made for his own personal benefit and not in furtherance of his employer's business. It is insisted that the action of plaintiff in going to an upper floor to pay a personal bill bore no relation to anything he was employed to do for the defendant, and therefore the injury to him did not arise out of or in the course of his employment. A number of earlier cases are cited as giving support to the defendant's contention. (*Bevard v. Coal Co.*, 101 Kan. 207, 165 Pac. 657; *Haas v. Light & Power Co.*, 109 Kan. 197, 198 Pac. 174; *Sellers v. Reice Construction Co.*, 124 Kan. 550, 262 Pac. 19.) The Bevard case turned on the point that the accident did not occur in or about a mine in which the workman was employed and hence was not compensable. The Haas case was controlled by the fact that the workman abandoned the work for which he had been employed and went on a considerable journey into a dangerous place in the plant, where he had no business to be, and was told not to go. He went there on some mission of his own without the assent of his employer, and in fact against instructions. It was held that he was not entitled to recover compensation. The case recognizes that a different rule would apply if the risk was incidental to the employment. In the Sellers case an employee left his work and went out to move a car of a fellow employee which he thought was in the way of an approaching truck loaded with timbers, which truck transportation bore no relation to the work in which the employee was engaged, and while moving the car over a railroad he was struck by a train and killed. It was held that the accident causing the workman's death did not arise out of his employment. In that case, however, it was recognized that compensation is not restricted to cases of injury flowing from some hazard peculiar to the employment, but that it is sufficient if the hazard was incidental to the employment, citing *Tierney v. Telephone Co.*, 114 Kan. 706, 220 Pac. 190.

The present case is distinguishable from a number of others which have been referred to where the workman was doing something for himself at the time of the injury without the permission of his employer or in violation of some rule or practice of his employer. Here the activity of the workman at the time of the injury was done with the express permission of the employer and also in accordance with a prevailing rule and practice in the mill. The rule had been adopted not wholly for the benefit of the workmen but in part for the benefit of the employer in facilitating the work. The relation between the parties was contractual. The employer had made payment of personal obligations a duty of his employees, and made a point of it that they should turn aside and pay bills when collectors called, and that it should be done on the company's time. Compliance with the instruction was evidently intended to facilitate the business of the company and in a way was an incident of the employment. The employer had made provision for a temporary interruption of the ordinary work of an employee to attend to a personal matter. It was an established practice of the mill to turn aside for a momentary interval to attend to a personal matter, something like the common practice of allowing an employee time to go to the toilet or to answer a personal telephone call, which would be regarded as incidental to the employment. It appears that the momentary interruption was within the contemplation of employer and employees, and it was a rule of the company that it should be done during the hours of service on the company's time. In regard to the use of the man-lift at the time of the injury, the purpose was to facilitate the business of the company by the conservation of the time and energy of employees. The foreman testified it was adopted for that purpose, adding that—

"If a man was going to the fourth floor and ran upstairs, for a few minutes, after he got up there he wouldn't amount to much because of the energy he had used, whereas, going up the man-lift there wasn't any exertion. I expected the men to use that elevator."

Although the errand of plaintiff to pay a bill to another employee was personal with which the defendant had no material concern, it is apparent that the defendant was interested in saving the energy of the employee, the time taken for it, and for that reason the employee was expected to use the man-lift. The cited case of *Thomas v. Manufacturing Co.*, 104 Kan. 432, 179 Pac. 372, although not directly in point with the instant one, has a bearing upon it. There the plaintiff, an employee, was injured during a half-hour inter-

mission at noon, during which lunch was eaten, and remained on the premises after eating her lunch, and she and other employees engaged in playing with and riding on a truck which was an approved custom of the plant, and while at play she was accidentally injured. It was held that this was an incident of the employment and that the accident arose out of and in the course of her employment. It was said that injuries received at play are not usually classified as arising out of employment and that "if the present case is to be taken out of the general rule, it must be upon the ground that the habit of the girl employees to play with the trucks during the noon intermission with the knowledge and express consent of the foreman and without objection by any one representing the defendant made such practice one of the conditions under which the business was carried on, upon much the same principle as employers are held liable for the result of horseplay which has grown to a custom. (*White v. Stockyards Co.*, 104 Kan. 90, 177 Pac. 522.) Injuries have been held to arise out of the employment whenever they are 'such as the character of the business or the conditions under which it is carried on make likely, and the result either was or should have been in the contemplation of the employer.' " (p. 437.)

The trial court in that case gave an instruction to the effect that if the plaintiff was injured as a direct and natural result of a risk reasonably incident to the employment in which she was engaged, it must be considered as arising out of and in the course of her employment. This instruction was approved and in sustaining it a quotation was made from *Archibald v. Compensation Commissioner,* 77 W. Va. 448, as follows:

"Such acts as are necessary to the life, comfort and convenience of the servant while at work, though strictly personal to himself, and not acts of service, are incidental to the service and injury sustained in the performance thereof is deemed to have arisen out of the employment. A man must breathe and occasionally drink water while at work. In these and other conceivable instances he ministers unto himself, but in a remote sense these acts contribute to the furtherance of the work. . . . That such acts will be done in the course of employment is necessarily contemplated and they are inevitable incidents. Such dangers as attend them, therefore, are incident dangers. At the same time injuries occasioned by them are accidents resulting from the employment." (pp. 451, 452.)

Many other authorities are cited to sustain the view that the plaintiff's injury arose out of and in the course of her employment.

Another case having similar features to the present one is *McDonnell v. Swift & Co.*, 124 Kan. 327, 259 Pac. 695. There an employee

who rode to the employer's plant in his own car had been assigned a place in the company's yard to park his car. On the morning of his injury he found upon arrival at the plant that some one else had placed his car in the place assigned to him. He went into the plant and reported the fact to the foreman, who told him to go and find whose car had been parked in his stall and have it removed. He started to carry out the suggestions and while passing through the plant fell into a vat of hot water and was badly scalded so that death resulted the following day. Although the auto which he was endeavoring to park was his private property and was not needed, nor used in his employer's business, and notwithstanding that the parking of his car was his own private business and was not a matter of concern to the employer, it was held that he was within the protection of the compensation law. He was in the plant, had been directed by his foreman to go on the errand mentioned and had been injured while following the direction. It was decided that the injury arose out of and in the course of his employment.

A contention is made that the bill that the plaintiff went to pay with the permission of his foreman was not a real obligation. It appears that he was moving from one residence to another within the town and had procured the car of his brother-in-law, which was driven by the wife of the brother-in-law to haul goods from the old to the new home. While carrying plaintiff's goods and his wife on one of the trips, a collision occurred which caused damages to the car of another. These damages were adjusted by plaintiff and his brother-in-law on the terms that each would pay one-half of the damage caused in the collision, and he was on his way to the fourth story to make a payment on the damages when the accident occurred. The indebtedness assumed by plaintiff was a real one, and afforded a sufficient foundation for the settlement made. It was enough that plaintiff believed he was indebted and was in good faith proceeding to pay the bill in accordance with the prevailing rule of the mill and with the permission of the foreman when he was injured.

We conclude that as the accident occurred in the plant where plaintiff had a right to be and was doing what he had a right to do when he was injured—had in fact express permission to do—and was doing it under a rule of his employer—that the errand was an incident of his employment, and that within the authorities cited his injury arose out of and in the course of his employment.

The judgment is affirmed.