No. 29,037.

ORSOLINA S. CORPORA, *Appellant,* v. THE KANSAS CITY PUBLIC SERVICE COMPANY, *Appellee.*

(284 Pac. 818.)

Opinion filed February 8, 1930.

*J. E. McFadden, O. Q. Claflin, Jr.,* both of Kansas City, and *H. A. Ault,* of Kansas City, Mo., for the appellant.

*E. S. McAnany, M. L. Alden, Thomas M. Van Cleave,* all of Kansas City, and *Charles L. Carr,* of Kansas City, Mo., for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This case had its inception in a compensation award made to the plaintiff for a fatal injury to her husband, who was an employee of defendant, a street railway company in Kansas City.

From the award allowed by the commissioner the defendant invoked its statutory right of appeal to the district court, where the cause was tried upon the record. The district court set aside the award and on April 20, 1929, gave judgment for defendant, pursuant to its finding, which reads:

"Upon examination of the record the court finds as a matter of law that the injury sustained by Angelo Corpora on January 12, 1928, did not arise out of his employment with said defendant, the Kansas City Public Service Company, and is therefore not compensable, and that the award heretofore made herein should be set aside for the reason that said injury did not arise out of the employment of Angelo Corpora with the defendant."

Plaintiff appeals.

Defendant moves to dismiss for the reason that the accident happened on January 12, 1928, at a time when this court had no jurisdiction of such appeals. (*Norman v. Consolidated Cement Co.,* 127 Kan. 643, 274 Pac. 233.) The proceedings before the compensation commissioner were had while the act of 1927 was in force and also when the commissioner's award was appealed to the district court. But ere the district court had announced its decision the present statute had taken effect. It reads:

"That any party to the proceedings may appeal from any findings or order of the district court on questions of law." (Laws 1929, ch. 206, effective March 15, 1929.)

It is generally held that changes affecting the right of appeal, without qualifying language, apply to pending litigation. In *McClain v. Williams,* 10 S. Dak. 332, 43 L. R. A. 287, it was said:

"It seems to be well settled that, if a law conferring jurisdiction is repealed without any reservation as to pending cases, all such cases fall with the law, and, of course, where the law conferring the right of appeal is partially repealed. (*Baltimore & P. R. Co. v. Grant,* 98 U. S. 398, 25 L. Ed. 231; *Ex Parte McCardle,* 7 Wall. 514, 19 L. Ed. 265; *United States v. Boisdore,* 8 How. 113, 12 L. Ed. 1009; *McNulty v. Batty,* 10 How. 72, 13 L. Ed. 533; *Norris v. Crocker,* 13 How. 429, 14 L. Ed. 210; *The Assessors v. Osbornes,* 9 Wall. 567, 19 L. Ed. 748; *United States v. Tynen,* 11 Wall. 88, 20 L. Ed. 153; *Callahan v. Jennings,* 16 Colo. 471; Cooley, Const. Lim. p. 474.)" (p. 336.)

In *Cassard v. Tracy*, 52 La. Ann. 835, 49 L. R. A. 272, it was held:

"Under the constitution of 1879 appeals to the court of appeals for the parish of Orleans in cases involving less than $500 were upon questions of law alone. Under the constitution of 1898 the court has jurisdiction in all cases, both of the law and the facts." (Syl. ¶ 2.)

"The moment the constitution of 1898 went into effect, appeals then pending in the court of appeals became entitled to consideration, not from the point of view of the jurisdiction conferred upon the court by the constitution of 1879, but from the point of view of the jurisdiction conferred upon the court by the constitution of 1898." (Syl. ¶ 1.)

In *Coal Co. v. Barber*, 47 Kan. 29, 27 Pac. 114, a judgment of the district court against a coal company for $65 was rendered on February 2, 1889. At that time the coal company had a right to an appellate review and it promptly procured a case made, duly settled by the trial judge, on February 20, 1889, and on March 20 it filed its petition in error and directed summons to be issued thereon. On the same day a statutory amendment to the code of civil procedure took effect, which limited the supreme court's appellate jurisdiction over mere money judgments to sums in excess of $100. The court held that the right of appeal was governed by the procedural statute in force at the time the petition in error was filed, not by the rule of the code in force at the time the judgment was rendered.

In 2 Cooley's Constitutional Limitations, 8th ed. 790, it is said:

"And if a case is appealed, and pending the appeal the law is changed, the appellate court must dispose of the case under the law in force when its decision is rendered."

In 3 C. J. 328 the rule is stated:

"Except where it is provided that a statute which gives, takes away, or modifies the remedy by appeal or other mode of review shall not apply to actions which are pending, the statute applies to cases commenced before, but in which the judgment, decree, or order sought to be appealed from is not rendered or made until after it goes into effect."

See, also, 6 R. C. L. 294-296.

In view of the foregoing, appellee's motion to dismiss must be denied.

Turning then to the question of law involved in this appeal, it appears that in conformity with the statute the case was tried and determined in the district court upon the record made before the compensation commissioner; and it comes to us in much the same

way. The trial court did have a broader power of review than does the supreme court. In this class of cases, under the compensation act of 1927, the district court hears no additional evidence and sees no·witnesses, but it has both jurisdiction and duty to make an independent adjudication as to the facts as well at the law; and except as otherwise bound by the statute itself it may increase or diminish any award of the commission "as justice may require." The statute of 1927 has not been materially changed by the act of 1929 in that respect. It reads:

"Any party to the proceedings may appeal from any and all decisions, findings, awards or rulings of the commission to the district court of the county where the cause of action arose upon questions of law and fact as presented and shown by a .transcript of the evidence and proceedings as pre- . sented, had and introduced before the commission. . . . On any such appeal the district court shall have jurisdiction to grant or refuse compensation, or to increase or diminish any award of the commission as justice may require." (Laws 1929, ch. 206, amending Laws 1927, ch. 232, § 42.)

The supreme court's jurisdiction being limited to questions of law only, it must take the record as it finds it; and where the evidence before the commissioner who made the award would warrant two opinions of its probative value or the credence which should be accorded it, this court would have to accept as correct the finding of the district court thereon although it did not agree with that of the commissioner. In no other apparent fashion can effect be given to the broader power of the district court to determine questions of fact as well as questions of law. In this case, however, it is not apparent that the district court disagreed with the compensation commissioner on any mere question of fact. While the trial court made a finding that the injury to the workman did not arise out of his employment, that finding was a conclusion correctly or incorrectly deduced from the evidence about which there was no serious controversy. The evidence clearly showed that the workman arrived at his employer's premises a few minutes before 7 a. m., which was the hour his regular duties began. Prior to going to work it was his preliminary duty to sign a register to show he was on hand. This he did. Then he went to a dressing room to change clothes and put on his overalls. While putting on his overalls he fell to the floor and sustained an impacted fracture of the right hip. He was taken to the hospital and contracted pneumonia. He was over 70 years of age, and had a defective heart, and the three afflictions caused his death. One doctor testified:

"Personally I think the cause of his death was a combination of all the troubles he had, namely the fracture of the hip, the pneumonia and the heart condition. I would not rule out any one of these."

Appellee cites cases like *Cox v. Refining Co.*, 108 Kan. 320, 195 Pac. 863, 19 A. L. R. 90, to justify the judgment. In that case a workman was afflicted with periodically recurring seizures of epilepsy. He had one of these recurrences while at work in his master's service. The epileptic fit caused him to fall and injure himself. The court ruled that the injury did not arise out of his employment. There are many cases of like holding where the fall and consequent injury to a workman are due to natural weakness and not to his employment. (*Cinmino's Case*, 251 Mass. 158, 37 A. L. R. 769, and note.) This court has no purpose to challenge the soundness of this rule of law, but we fail to discern that the case at bar can be fairly subjected to its control. Another point suggested by appellee is that the workman's injury did not arise out of his employment because it happened two minutes before 7 o'clock a. m., when he was not yet in his master's service, nor doing anything of account for his master. It is argued that putting on his overalls preparatory to going to work was purely a matter of private concern to the employee; the workman might have put on his overalls before he left home that morning, or gone to work in his street garments, so far as the employer was concerned. There are workmen's compensation cases reported in the books which tend to support that argument, but a more liberal view of the statute pervades our own decisions. We have held that the compensation act extends to injuries received by a workman injured while he was on his way to the timekeeper's office to check out after his day's work was done. (*Monson v. Battelle*, 102 Kan. 208, 212, 170 Pac. 801.) In *McDonnell v. Swift & Co.*, 124 Kan. 327, 259 Pac. 695, compensation was awarded to the widow of a workman who met his death by falling into a vat of hot water while on a private errand on the employer's premises to ask a fellow employee to remove his automobile from the place where the deceased usually parked his car. In *Taylor v. Hogan Milling Co.*, ante, p. 370, 282 Pac. 729, an award of compensation was upheld where the workman received an injury in his employer's elevator while on an errand to pay his private debt to a fellow employee. These compensation awards were upheld on the liberal theory that the accidents and injuries were sustained while the workmen were engaged in matters incidental to their employment.

A plethora of decisions in other jurisdictions can be gleaned to the same effect. *In re Matermack*, (Ohio) 12 N. C. C. A. 665, was a case where an employee in a blast furnace, after his day's work was done, began to take off his work shirt, which was wet with perspiration, and while pulling it over his head accidentally threw his shoulder out of its socket. It was held by the industrial commission that the injured workman was entitled to compensation.

In *Terlecki v. Strauss*, 85 N. J. L. 454, a factory employee quit work at her machine shortly before noon and began combing particles of wool out of her hair preparatory to going home. Her hair caught in some machinery and she was injured. It was held that the accident arose out of and in the course of her employment. The court said:

"The preparation reasonably necessary for beginning work after the employer's premises are reached, and for leaving when the work is over, is a part of her employment. A workman is none the less in the course of his employment because he is engaged in changing his street clothes for his working clothes, or in changing his working clothes for his street clothes." (p. 455.)

In *Driscoll v. London Guar. & Acc. Co. Ltd.*, 2 Mass. Workm. Comp. Cas. 570, 12 N. C. C. A. 667, an employee in a laundry arrived at her place of employment at 7 a. m. She was not required to go to work until 7:30 a. m., but it was her custom to arrive early and get a cup of coffee and some eatables at the restaurant on the premises before going to work. Walking up the main stairs to the restaurant, she fell and fractured her arm. The industrial accident board held that the moment of beginning actual work is not the true test as to the time when employment begins, and if an employee is (reasonably?) on the premises before he actually begins his work and during that time an injury occurs it arises out of and in the course of the employment.

In *Phil Hollenbach Co. v. Hollenbach*, 181 Ky. 262, which was a compensation case, it was held:

"One who is washing, dressing, and preparing himself on the master's premises at the close of the day's work to leave the premises is, in the meaning of the act, in the course of his employment. The period of going to and returning from work is not limited by the exact time when the workman reaches the scene of his labor and begins work, or when he ceases it, but includes a reasonable time, space and opportunity, before and after, while he is at or near his place of employment." (Syl. ¶ 5.)

In our own case of *Thomas v. Manufacturing Co.*, 104 Kan. 432,

179 Pac. 372, an award of compensation was affirmed against a soap manufacturing company on behalf of a young female employee who was injured at play during a half hour's intermission at noon. The award was upheld upon the theory that those acts which are conducive to the health, convenience and comfort of the employee, though strictly personal to herself and not acts of service, are incidental to the service and are justly said to arise out of the employment.

In view of the foregoing this court must hold that the trial court's conclusion and judgment were erroneous, and our order must be that the judgment of the district court be set aside, the compensation award reinstated, and that judgment be rendered accordingly.

The judgment is reversed.

BURCH, J., dissenting.

JOCHEMS, J. (dissenting): It is with diffidence that I write a dissenting opinion.

The district court's judgment setting aside the award was based upon the conclusion that as a matter of law the injury of the deceased "did not arise out of the employment."

In the first place, it appears that the act is unfair to the workman. Section 1, chapter 232, Laws of 1927, reads in part:

"If in any employment to which this act applies, personal injury by accident arising out of *and* in the course of employment is caused to a workman . . ."

It is apparent from a reading of the above statute that for a workman to be entitled to compensation both elements must exist—first, the accident must arise out of the employment; and second, it must arise in the course of the employment. It seems unfair that before a workman can obtain compensation he must be able to demonstrate that his case satisfies both of the above requirements of the statute. In all justice, if a workman is injured "in the course of" his employment, then he ought to get compensation whether the accident "arises out of" the employment or not. But the legislature evidently thought otherwise. Or perhaps it just did not think. It took the law in the form in which it was brought to this country from England, as adopted by parliament in 1897, and evidently did not pause to consider the effect of imposing on the workman the two requirements. It is possible that the act as drawn may be suitable for conditions in England, and at the same time not fit the needs

of our workmen. It may be that the welfare of our workmen would be best promoted by taking out the "and" and putting in an "or," so that the act would read: "accident arising out of *or* in the course of the employment."

Be that as it may, all the above is aside from the mark except that it makes clear my idea of what the law should be. Further, it illustrates what I fear we are reading into the law by some of our decisions.

Under the old common-law action between employee and employer, the term used in the decisions was "in the scope of his employment" or "in the course of his employment." In other words, "in the course of his employment" satisfied the requirements. The workmen's compensation law was heralded by its advocates as one which would greatly improve the workman's situation. It was represented to the workman that he would be protected from the ravages of the lawyer, who was always held forth by the exponents of the law as an unmounted Jesse James; that among the other great benefits to be derived, the rigors of the common law such as "contributory negligence," "assumption of risk," and similar doctrines would be eliminated; that the act throughout was more liberal and more beneficial to the workman than the old common law. And it did accomplish some of these objects. But why, if it was really intended to emancipate the workman and liberalize his right of recovery, did it engraft on the old common-law requirement of "in the scope (or course) of his employment" the additional burden that the injury must "arise out of the employment"?

But we have to take the law as the legislature passed it. We have no choice. Therefore the test in every one of these cases must satisfactorily show that both elements of the statute have been fully met in order to allow compensation.

Now the question in this case is, Did the injury "arise out of" the employment within the meaning of the law? It is manifest that an injury may occur "in the course of" an employment and yet not "arise out of" the employment within the meaning of the statute. I cannot conceive, however, of a case of an injury which "arises out of" an employment that would not be "in the course of" the employment.

There is no question but that the injury of the deceased was received by him "in the course of" his employment, but it did not "arise out of" the employment within the definition of that term as

previously laid down by this and other courts. It is the opinion of the writer that the trial judge followed the case of *Sellers v. Reice Construction Co.,* 124 Kan. 550, 262 Pac. 19, in which the following language is used:

"The phrase 'arising out of . . . employment' suggests causal relation between employment and injury. The verb 'arise' has a meaning which takes note of circumstances viewed as results, and the prepositional phrase 'out of' has a meaning of 'from (something) as a cause.' (Oxford English Dictionary.) Prompted by the suggestion, the courts frequently define the phrase by stressing the element of causation. Thus, in *McNicol's Case,* 215 Mass. 497, the court said:

" 'It is sufficient to say that an injury is received "in the course of" the employment when it comes while the workman is doing the duty which he is employed to perform. It "arises out of" the employment, when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury. Under this test, if the injury can be seen to have followed as a natural incident of the work and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it arises "out of" the employment. But it excludes an injury which cannot be fairly traced to the employment as a contributing proximate cause and which comes from a hazard to which the workmen would have been equally exposed apart from the employment. The causative danger must be peculiar to the work and not common to the neighborhood. It must be incidental to the character of the business and not independent of the relation of master and servant. It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence.' (p. 498.)" (p. 553.)

In the same case the court further said:

"Applying the test of causal relation, the injury to Sellers did not arise out of his employment. It is probable to a high degree of certainty that Sellers would not have been struck by a Missouri Pacific train on the Hallock road crossing at 1:25 p.m. of November 20, 1923, while he was moving Jacobs' car, if he had not been employed by the construction company as a member of the ditching crew working in the Fairfax district. The employment, however, does not explain how it came about that Sellers was struck by the train. Given the employment, the accident must still be accounted for. Given the accident, no previous observation of the laws of nature, or previous experience of mankind, would lead the mind backward to employment as a member of the ditching crew as its efficient cause. The employment was simply a fact in the complete history of the accident; it was not a factor of appreciable influence in producing the accident." (p. 555.)

Applying the test of the Sellers decision to this case, we cannot

satisfy ourselves that there was "upon a consideration of all the circumstances a causal connection between the conditions under which the work is required to be performed and the resulting injury." There was nothing in the nature of the employment or the occupation of the deceased, or any exposure to which he was subjected, which *caused* the injury. Neither was there present any *causative* danger peculiar to the work which resulted in the injury. I believe the majority decision confuses the term "arise out of" with "in the course of." "Incident to the employment," to my mind, means "in the course of the employment." Nothing more.

When the court has set up what appears to be a guidepost, like the Sellers case, for the direction of district courts who are traveling the highways of litigation, and when it is manifest that the trial court has been guided thereby, we ought not to take down the sign without putting up another in its place. In other words, if we are not going to follow the definitions laid down in the Sellers case, then I think we ought to modify those definitions there established and state specifically that the Sellers case is modified to that extent. Perhaps that is really what ought to be done in order to get away from the apparent confusion which now exists in the construction of this statute. But so long as the Sellers case stands without specific modification or without being overruled, I feel that it should be followed.

Following the Sellers case, the judgment of the district court should be affirmed.