No. 33,719

PANSY STAPLETON, Widow of Orville C. Stapleton, Deceased, *Appellee,* v. THE STATE HIGHWAY COMMISSION OF THE STATE OF KANSAS, *Appellant.*

(76 P. 2d 843)

Opinion filed March 5, 1938.

*Lester M. Goodell,* assistant attorney general, *J. Glenn Logan, Otho W. Lomax,* both of Topeka, *Robert Osborn,* of Stockton, and *Wint Smith,* of Salina, for the appellant.

*Ray H. Calihan,* of Garden City, *G. Clay Baker* and *Allen Meyers,* both of Topeka, for the appellee.

The opinion of the court was delivered by

ALLEN, J.: This case involves a claim for compensation under the workmen's compensation act. Orville C. Stapleton, an employee of the state highway commission, suffered an injury on January 16, 1937, which resulted in his death. This is an appeal from a judgment of the district court of Finney county sustaining an award in favor of the claimants, Pansy Stapleton, widow and guardian of Willard R. Stapleton, minor dependent.

There was no serious conflict in the testimony. The deceased had been employed in the maintenance department of the state highway commission since 1929. During the time of his employment it was his custom to move his residence from town to town to be near his work. When first employed he was sent to Sublette; later he moved to Garden City and from there to Kalvesta. At the time of his death, under the direction of his superior he was moving from Kalvesta to Garden City to be near his work on highway 83 north.

Lyle S. Munn, maintenance supervisor, testified that the deceased was under his direction and supervision; that he requested Stapleton to move to Garden City. There was a new road there, and he wanted Stapleton on the road machine. He requested the deceased to make the move to be closer to his work; he was to live as close to the machine as he could find a residence; he was requested to be there Monday to take over the machine. Ordinarily a maintenance man lives where the machine is stored, so he can be available if an emergency arises. No deduction was made from his salary while engaged in moving. The supervisor further stated that a maintenance man has no definite set hours; it might be early in the morning or late at night. The minimum is supposed to be eight hours a day. It is not checked. He would be supposed to work any time during an emergency, a full day if necessary.

Stapleton was an oil section man. He patched breaks in the mat surface, the shoulders and ditches and signs. This type of work sometimes requires longer hours of work than others.

Mrs. Pansy Stapleton testified that on January 16 the deceased came to town and got a trailer to move the household goods to Garden City. He started out a little before eight—that was during his working hours, and at the direction of the supervisor. "There were no eyewitnesses to the accident, he was alone, but he said it was the dust. The dust hit the trailer, it was blowing badly that day. . . . He started to make the move as ordered and his car overturned on the highway." The main part of the goods was transported by a "regular mover" in a transfer truck, and the balance in a trailer. The transfer truck did not belong to the highway commission and "the trailer was borrowed from McCoy's garage."

Did the accident resulting in the death of Stapleton arise out of and in the course of his employment?

In *Tierney v. Telephone Co.*, 114 Kan. 706, 220 Pac. 190, a youth seventeen years of age was employed by defendant. His duties

were the charging of batteries in various towns in Crawford county. One morning he was directed by his superior to go to Weir City and charge the batteries at the central exchange, and was told he could ride with a lineman who was going to that place. He was directed to assist the lineman along the way. In so doing he broke his arm while cranking a car. In upholding an award for compensation it was said:

"But it is urged that the accident did not occur on, in or about defendant's electric work or telephone business—not within the zone of danger, but happened on the public highway. What is the zone of danger of a telephone business? A telephone business is not like a factory or mine which has a circumscribed and definite situs; a telephone business radiates its wires far and wide along the public highways of a township, county or state. But its employees in the discharge of their duties string the wires, inspect them, and repair them on the public highways, and they may get hurt in so doing, and may meet with accidents incidental thereto, so the court has no misgiving in holding that as to telephone-line employees the zone of danger includes every place, including highways, where their duties reasonably require them to go, and thus construed the plaintiff's injury was sustained on, in and about premises occupied and used by the defendant in the pursuit of its business." (p. 710.)

In *Kennedy v. Hull & Dillon Packing Co.*, 130 Kan. 191, 285 Pac. 536, a traveling salesman for a packing house was employed to solicit orders for goods and make collections from customers in allotted territory, covering several counties, and to travel over the territory in an automobile in the performance of his duties. While traveling over a highway he came in contact with an electric wire which had been thrown across the road during a storm, and was killed. In answer to the contention that he was not at the time in his allotted territory, this court said:

"If his duties as traveling salesman required him to travel over the highway where he was killed, with its well-known hazards, one of which he encountered, the action should be regarded to be in his working place and in the course of his employment." (p. 193.)

In *Kearns v. Reed*, 136 Kan. 36, 12 P. 2d 820, the duties of a workman at a coal chute were to keep the coal chute full of coal, and to coal the engines brought to the chute for that purpose. For several years prior to his death his hours of labor had been from 7 o'clock in the evening until 8 o'clock in the morning. It was customary for him to go to the depot to learn what trains would arrive. He was found dead near the railroad track under circumstances that would indicate he was on his way to the depot to secure information as to the arrival of the trains. The court found that the workman met his

death by accident as defined in *Gilliland v. Cement Co.*, 104 Kan. 771, 180 Pac. 793; *Barker v. Shell Petroleum Corp.*, 132 Kan. 776, 297 Pac. 418, and that at the time he was acting in the course of his employment, under the rules announced in *Thomas v. Manufacturing Co.*, 104 Kan. 432, 179 Pac. 372; *White v. Stock Yards Co.*, 104 Kan. 90, 177 Pac. 522; *Corpora v. Kansas City Public Service Co.*, 129 Kan. 690, 284 Pac. 818, and *Taylor v. Hogan Milling Co.*, 129 Kan. 370, 282 Pac. 729. (The court noted the fact that some of the cases turned on the words "on, in or about" which were formerly in the statute, but which were eliminated by the amendment of 1927.) See, also, *McDonald v. Swift & Co.*, 124 Kan. 327, 259 Pac. 695; *Fairchild v. Prairie Oil & Gas Co.*, 138 Kan. 651, 27 P. 2d 209.

In the case at bar it is argued that the workman was on his way to assume the duties of his employment and therefore the injury which caused his death did not arise out of and was not in the course of his employment. In *Kennedy v. Hull & Dillon Packing Co.*, supra, the traveling salesman was on his road to the town where his work began when the accident occurred, and it was held that the highway over which he was required to travel was to be regarded as his working place. It was further stated: "Under the circumstances of the case, we think Kennedy should be regarded as within his territory and in the course of his employment when the accident occurred. His employment differs from one employed in the factory who might have been injured on his way to the factory where his work was to be performed." (p. 195.)

In *Woods v. Jacob Dold Packing Co.*, 141 Kan. 363, 41 P. 2d 748, a traveling salesman, while off his usual route, was killed in an automobile accident. It was contended that he was on an errand of his own when he was killed, and that his death did not arise out of or in the course of his employment. As there was evidence to support the trial court's finding, the award was sustained.

In *Mann v. Board of Education*, 266 Mich. 271, 253 N. W. 294, a high-school principal was killed when traveling to the state university in response to an invitation from the registrar of that institution. He was under no duty to attend, but his superior was willing that he should go on school time, but at his own expense. The supreme court of Michigan in affirming an award said:

"At the time of the accident Mr. Mann was not exercising a personal privilege wholly apart from his employment or his employer's interest, but was about the performance of an act, incident to and recognized as of value by his superior in connection with high-school purposes." (p. 273.)

And in *Lasear v. Anderson,* 99 Ind. App. 428, 192 N. E. 762, it was held that the accident arose out of and in the course of his employment, where a long-distance truck driver, who was responsible for the merchandise on his truck, with the drivers of two other trucks, hired a cabin at night at a tourist camp, parking their trucks within twenty-five feet of the cabin, and was asphyxiated during the night by the fumes from a gas stove. The court held he was performing the duties imposed upon him at the time of his death.

In *Industrial Commission v. Aetna Co.,* 64 Colo. 480, 174 Pac. 589, 3 A. L. R. 1336, a foreman of construction work, going from one job to another, was injured by the overturning of a private conveyance in which he was riding. In holding that injury arose out of and in the course of his employment, the court said:

"In the case at bar it was an essential part of his employment that the deceased should travel from the place where he had installed one plant to the place where he was to install another. It is also clear that he adopted a reasonable, and apparently the only facility for such travel under the circumstances, and as safe as any other that may have been available. No case is cited that adopts a different rule, and we know of none, as applied to workmen's compensation statutes. . . . He was traveling on his employer's business, which by his contract he was bound to do, and for which it is reasonably assumed he was being paid to do, for it is not to be presumed that he was, under the circumstances, traveling such distances upon his own time. It may be safely said that he was doing that which was incidental to the character of the business, and not independent of the relation of master and servant, but rather had its origin in the risk connected with the employment. . . . " (p. 487.)

In the case before us the superior officer of the deceased had requested that he move from Kalvesta to be near the road machine. He was an emergency man, "on call" day or night. He was required to move to any place where the services of an expert road maintainer were required, and in the course of his employment had made several such moves. Moving his household goods was as essential in the performance of his duties as moving his road machine. It was a necessary act to carry on the work entrusted to him. We think it is clear that the fatal injury arose out of and in the course of his employment.

It is also suggested there was no causal connection between the injury and the employment. For the reasons stated in *Kennedy v. Hull & Dillon Packing Co.,* supra, and other Kansas cases cited above, we think there is no merit in this contention. (See, also, Harper on Torts, § 213.)

The judgment is affirmed.