## DALLAS COUNTY PULPWOOD COMPANY et al *v*. F. J. STRANGE

74-281                    520 S.W. 2d 247

Opinion delivered March 17, 1975

*Shackleford, Shackleford & Phillips,* by: *Norwood Phillips,* for appellants.

*Huey and Vittitow,* for appellee.

GEORGE ROSE SMITH, Justice. In this workmen's compensation case the Commission found (a) that the claimant Strange was an employee of the appellant pulpwood company at the time he was accidentally injured and (b) that the claimant's injuries arose out of and in the course of his employment. The circuit court affirmed. For reversal the appellant employer contends that there is no substantial evidence to support either of the Commission's findings of fact. We cannot agree.

Upon the first issue the proof shows that the appellant was supplying pulpwood to Continental Can Company. The appellant had some fifteen haulers who, like the claimant, cut the pulpwood (with the assistance of their own crews) and delivered it by truck to Continental's yard. The claimant had ostensibly purchased his truck from the appellant. The contract, not in writing, required the appellee to pay for the truck, plus the cost of liability insurance, at the rate of $3.00 per cord of wood. The employer's testimony indicated that the claimant's truck would be taken away if he hauled for anyone else. The Commission, upon adequate substantial evidence, made the following findings of fact upon the issue of the claimant's status as an employee:

> The Commission is convinced that the relationship in this case is definitely one of employee-employer. The respondent exercised complete control over the claimant. The claimant did not purchase the uncut timber

with his own money and he was certainly not independent from the respondent for the very reason that he would lose his truck if he hauled pulpwood to any other dealer. The respondent had control of the cutting, loading, and hauling of the logs and, on occasion would travel to the cutting sites to make sure that correct procedures were used in the cutting and hauling process. There is no hard and fast rule to determine whether a person undertaking to do work for another is an employee or an independent contractor, and each case must be determined by its own particular facts and we are convinced that the particular facts in this case reveal that the claimant was, indeed, an employee.

The significant difference between this case and the case of *Pearson* v. *Lake Lawrence Pulpwood Co.*, 247 Ark. 776, 447 S.W. 2d 661 (1969), cited by the appellant, is that in *Pearson* the Commission found that the claimant was not an employee of the pulpwood company. We sustained the Commission's decision, because it was supported by substantial evidence. In the case at hand we again sustain the Commission's decision, for the same reason. That conclusion makes it unnecessary for us to consider the Commission's additional finding that the appellant is estopped to deny its workmen's compensation coverage of the appellee.

The second question is whether the Commission was justified by the evidence in finding that Strange's injuries arose out of and in the course of his employment. Here the facts are not really in dispute. On the day of his accidental injury Strange was engaged in buying a tractor for snaking logs out of the woods in his work for the appellant. During the morning Strange borrowed the $200 down payment from his employer, an individual doing business as Dallas County Pulpwood Company. Strange arranged to finance the rest of the purchase at a bank in Warren. Having completed those arrangements Strange went home to get his truck (the one he was using in his work) and tow the tractor to the worksite in the woods, where he would resume cutting timber the next morning. As Strange was backing out of his driveway he brushed against some limbs, fell to the ground, and was run over by one wheel of the truck.

There is ample authority to sustain the Commission's finding of fact that Strange was injured in the course of his employment. Blair states the general rule in his Reference Guide to Workmen's Compensation, § 9.32 (1974): "Preliminary preparations by an employee, reasonably essential to the proper performance of some required task or service, are generally regarded as being within the scope of employment and any injury suffered while in the act of preparing to do a job is compensable."

In *Fels* v. *Industrial Commission*, 269 Wis. 294, 69 N.W. 2d 225 (1955), the claimant was injured while repairing his own dump truck with the intention of taking it to the jobsite so that it would be ready to be loaded the following morning. The court upheld an award of compensation. In *McBride* v. *Preston Creamery Ass'n*, 228 Minn. 93, 36 N.W. 2d 404 (1949), the claimant was sanding an icy hill on a private road leading to his farm so he could drive his truck to work the next morning, to haul milk for his employer. In upholding the award the court said: "Here, it is undisputed that employee's employment required the use of the private road which he was attempting to sand at the time of his injury. Such work was in preparation for his employment the following day and was work which was clearly a necessary part thereof." Other pertinent cases include *Sieck* v. *Trueblood*, 485 P. 2d 134 (Colo. App., 1971); *Stapleton* v. *State Highway Commn. of Kansas*, 147 Kan. 419, 76 P. 2d 843 (1938); *Frandsen* v. *Industrial Commn. of Utah*, 61 Utah 354, 213 P. 197 (1923).

We do not imply, of course, that all injuries sustained by an employee in preparing for work are compensable. But here Strange was purchasing a tractor to be used in his work, his employer had approved the purchase by advancing the down payment, the whole transaction occurred during working hours, and Strange was injured while preparing to take the tractor to the jobsite. Those facts are substantial proof supporting the award.

Affirmed.

J. FRED JONES, Justice, dissent. I do not agree with the majority opinion in this case. As I view the majority opinion,

it comes close to nullifying a long line of our previous decisions wherein we have held that the Workmen's Compensation Act does not call for general accident insurance. See *Birchett* v. *Tuf-Nut Garment Mfg. Co.*, 205 Ark. 483, 169 S.W. 2d 574; *Barrentine* v. *Dierks Lbr. & Coal Co.*, 207 Ark. 527, 181 S.W. 2d 485; *Conatser* v. *D. W. Hoskins Truck Service*, 210 Ark. 141, 194 S.W. 2d 680, and the many other digested cases, too numerous to mention.

As I view the majority opinion in the case at bar, it goes beyond the outer limits in finding substantial evidence to support the findings of the Commission. When this court no longer distinguishes between substantial evidence and just any or some evidence in compensation cases, there will be little reason or need for appellate review.

It is my opinion in the case at bar, that there was substantial evidence Mr. Strange was an independent contractor but there was no substantial evidence he was an employee. In determining whether a workman is an employee or an independent contractor, we have heretofore considered the time for which he is employed; the right to terminate employment without liability; the method of payment for service, and the employer's obligation to furnish necessary tools and equipment. *Parker Stave Co.* v. *Hines*, 209 Ark. 438, 190 S.W. 2d 620. We have held that the most important test in determining whether a person is to do certain work as a contractor or a servant is the control reserved by the employer. *Parker Stave Co.* v. *Hines, supra.* We have held that if there is nothing in the employment contract showing intent of the employer to retain control or direction of manner or methods by which a party shall perform work, and no direction relating to physical conduct of such party or his employees in execution of work, the relation of independent contractor is created; but, if the employer retains control not only of the result, but also of the means and manner of performance, then the relation of master and servant is created. *Massey* v. *Poteau Trucking Co.*, 221 Ark. 589, 354 S.W. 2d 959. Mr. Strange testified that he and a Mr. Hooks were partners in the pulpwood business and that he had been in the business of hauling pulpwood about five years.

It appears rather inconsistent to me when practically the same evidence is found substantial in supporting opposite results or decisions. A comparison of the evidence in the case at bar with that in the case of *West* v. *Lake Lawrence Pulpwood Co.*, 233 Ark. 629, 346 S.W. 2d 460,[1] is a good illustration of what I mean. The primary difference in the relationship between Strange and Smith in the case at bar and that of West and Lawrence in the *West* case, was that West borrowed the money from the dealer Lawrence with which to purchase the timber he was hauling exclusively to Lawrence at the time of his injury; whereas, Strange had borrowed money from the appellant-dealer Smith with which to purchase the truck in which he had started to get a tractor he had recently purchased for himself, when he was injured.

Mr. Strange said his only purpose in contacting Mr. Smith relative to hauling pulpwood was the fact he and his partner Mr. Hooks already had some pulpwood cut and had no way to haul it. He said he and Hooks talked to Mr. Smith about a truck and Mr. Smith agreed to assist him in purchasing one. He said he agreed to haul his pulpwood to Mr. Smith and Mr. Smith agreed to hold out $3.00 on each cord of pulpwood hauled to him until the truck was paid for. He said that after acquiring the truck he and Mr. Hooks hauled to Smith the pulpwood they had already cut from timber they had purchased. He said he purchased pulpwood timber from a Mrs. Wilson who lived in front of his house, and also from a Mrs. Earnest under the same arrangement. He said that when he purchased timber, Mr. Smith would hold out of his pay the purchase price of the timber and would pay it to the owner direct. He said Smith would hold out $3.00 per cord to apply on the payment for the truck, and that Mr. Smith would then pay him the remainder on the basis of the number of cords he hauled. He said he had been hauling from Potlatch property about a month when he was injured; that Mr. Smith took him to the Potlatch tract and told him he could cut pulpwood anywhere he could get it off the tract. He said Mr. Smith requested them to haul twenty cords per week if they could get it. He said it was understood that if he hauled his pulpwood to some dealer other than Mr. Smith with

---

[1]Additional facts in *West* are set out in dissenting opinion.

the truck he was purchasing from Mr. Smith, that Mr. Smith would repossess the truck.

As to the circumstances surrounding the injury, Mr. Strange's testimony, as abstracted, is as follows:

"On July 17, 1973, I was injured about three thirty, I guess. That day, I had come over here (to Warren) and bought a tractor. There was a fellow with me till I got back to my house. I saw Mr. Smith that day; we went to the bank and got the money to pay for the tractor. Mr. Smith met me out at Mr. Burgess Williams. I called him. The purpose of buying the tractor was that I was going to move it up there where we was at and snake wood with it. I needed it in my employment. I talked with Mr. Smith about buying a tractor. He lent me some money to make the downpayment on it. He did not co-sign my note. I went and got my wife to sign the note. He loaned me two hundred or two hundred and fifteen dollars to make the downpayment. I went home to get my truck to come back and hook on the front end of it with the loader, pick it up and carry it over yonder where he was working, was where I was started when the accident happened."

Mr. Strange said as he started to back the truck out of the driveway at his home, the limb on a tree caused him to fall out of the truck and a truck wheel rolled over him.

On cross-examination Mr. Strange testified as to how he and Mr. Hooks had some pulpwood cut and were unable to get it hauled when they went to see Mr. Smith. As abstracted, he then testified in part as follows:

"It was sometime in January or February, 1973, when Marion Hooks and I went to see him. Marion Hooks and I were buying, paying for it together. We acquired the stumpage together and cut it together and we were looking for a way to haul it. I had seen Mr. Smith before at town but I never had talked with him prior to the time I talked with him in January or February, 1973. We talked at his house in Fordyce. Mr. Hooks and I were

going in partners on the truck. It was our agreement that Mr. Smith would buy the truck and let us pay it out by the cord. We were going to pay him $1,850.00 for the truck. I guess it was our agreement that after the $1,850.00 was paid, he would transfer the title to us. I more or less felt like I was renting the truck. I used it. I took it home with me at night. I bought gasoline for it. I paid for the maintenance on it like the tires, if it needed tires. I was going to get legal title to it when I paid off the $1,850.00. Mr. Hooks and I dissolved our working relationship in July, 1973, shortly before the accident."

Mr. Strange said he hired some people to work for him when he was cutting pulpwood and that he paid them out of what he received. He said that when he cut a load of pulpwood, he would haul it to the woodyard where it was scaled and he was paid so much per cord. He said he furnished his own chainsaws and that Mr. Smith did not furnish anything but the truck that he was buying. He said he bought his own gasoline and maintained his truck and chainsaws. He said he hired his own employees and paid them. He said that Mr. Smith did not hold out anything from his pay for Social Security or for workmen's compensation insurance. He said Mr. Smith would come by where they were working in the woods occasionally but did not tell him how to cut, or how to load, or how to haul the pulpwood. He said that all Mr. Smith wanted was wood and if he did not haul and deliver the wood, he did not get paid. He said that on the day he was injured he did not haul any pulpwood but on that day he had gone to Warren and purchased a tractor. He said he wanted to buy a tractor and "use it in my businesss." He said he met Mr. Smith in Warren and told Smith he needed to borrow some money to make the downpayment on the tractor. He said Mr. Smith went with him to look at the tractor and loaned him $215.00. He said that James Vines, who had been helping him cut pulpwood, went to Warren with him and went with him to look at the tractor, but that he did not go to the bank with him. He said he borrowed the balance of the money for the tractor from the bank; that Mr. Smith did not sign his note but did drive him out to where his wife worked, and that she signed the note with him. He said when he obtained the money from the bank and took it, together with

what he had borrowed from Mr. Smith, he paid the tractor company for the tractor and obtained the title to it. He said the bank did not require the title after he got his wife to sign the note with him. He said Mr. Vines drove him home and that he went directly to "crank up" his truck and after he got the truck started, Vines left. He said he intended to use the winch on the back of the truck to lift the front end of the tractor and intended to haul the tractor to Calhoun County where he had been cutting pulpwood, but did not intend to haul it that day. He said the accident occurred as he backed the truck out of his driveway.

Mr. Smith testified that he was a pulpwood dealer for Continental Can, who owned the yard where his pulpwood was delivered, and that all the pulpwood delivered to their yard had to come through him as their dealer. He said he had approximately fifteen haulers who hauled to his yard; that these haulers employed their own help and paid their own help, and that Mr. Strange was no different from the others. He said he was selling Mr. Strange a truck under an arrangement whereby the truck would be placed in Strange's possession and that the bank would retain title to the truck in Smith's name. He said the bank retained a lien against the truck and when it was paid for at $3.00 per cord, the bank would then transfer the title to Mr. Strange. He said $3.00 per cord was withheld from the amount owing to Mr. Strange and he in turn paid it to the bank on the truck indebtedness. He said the $3.00 per cord also covered the liability and collision insurance on the truck. He said that after Mr. Strange was injured, Mr. Strange's crew continued to haul pulpwood with his truck.

As I view the evidence in this case, the nearest Mr. Strange came to making out a case of employee-employer relationship was the fact that Mr. Smith required him to deliver twenty cords of wood per week *if he could do so,* and that Mr. Smith required that he sell his pulpwood to him as long as he was paying on the truck Smith had sold him. In the *West* case, *supra,* the substantial evidence upon which the majority opinion was based is stated as follows:

"In the present case the evidence shows that appellee,

Lake Lawrence Pulpwood Company, exercised no control over the details of the work. West's job was to haul pulpwood to the railhead at Norman where he was paid. The loading and hauling of the logs were left solely to the discretion of West. The evidence further shows that West did the cutting of the timber without the supervision of Lake Lawrence Pulpwood Company. The proof further shows that West furnished his own tools for the cutting and hauling of the logs, employed and paid his own employees and that he, West, was injured upon land leased by him for timber cutting. There is no evidence that West was required to work for any certain time or on any particular day and the method of payment to him was by the cord. The stipulated amount was paid for each cord of wood hauled, the price varying with the distance of the haul. The evidence does not show that the hauling of pulpwood was a part of the Lake Lawrence Pulpwood Company's operation, in fact the evidence indicates that the aforesaid company purchased only from haulers. The only evidence in any way contradicting this is that West testified that he *thought* he was covered by workmen's compensation."

The dissenting opinion pointed out, however, as follows:

". . . Tom West was not cutting timber upon land owned or rented in fact by him. The evidence shows that Lake Lawrence, through use of a straw man, had actually rented this land to avoid certain government regulations on cutting other parcels before completion of another. I find it even more significant that not only Tom West thought he was covered by workmen's compensation but evidently Lake Lawrence thought so too. Corroborated evidence was presented in the record to the effect that Lake Lawrence deducted a fixed sum per cord of wood cut for workmen's compensation insurance."

I find no substantial evidence that Strange was an employee of Smith or the pulpwood company, neither do I find any substantial evidence that the claimant's injury arose out of and in the course of his employment. Even if I could

agree that Strange was an employee, and that the injury he sustained as he started to drive the truck he was purchasing to pick up a tractor he had purchased and paid for with money he had personally borrowed, arose out of his employment, certainly I find no substantial evidence that the injury occurred while in the course of his employment. Strange was not being paid by the hour and he testified that he cut or hauled no pulpwood that day. He did say he had been to the woodyard but did not say what for. Certainly there was no evidence that Smith was paying Mr. Strange anything for looking at and purchasing the tractor. Mr. Strange simply went to town with another person and decided to buy a tractor. He found Mr. Smith in town and borrowed enough money to make the downpayment on the tractor and then went to the bank and borrowed the remainder of the purchase price of the tractor on his and his wife's note. He rode back home with the individual he had ridden to town with and was injured when he started back to town to pick up the tractor he had purchased.

I would reverse the judgment in this case.