No. 34,401

ANTHONY L. RUFF and MABEL C. RUFF, *Appellants*, v. THE FARLEY MACHINE WORKS COMPANY, *Appellee*.

(99 P. 2d 789)

Opinion filed March 9, 1940.

*W. L. Cunningham, D. Arthur Walker, Wm. E. Cunningham,* all of Arkansas City, and *Tinkham Veale,* of Topeka, for the appellants.

*Albert Faulconer, Kirke W. Dale* and *Donald Hickman,* all of Arkansas City, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This was an action for damages under our wrongful death statute (G. S. 1935, 60-3203, 60-3204). The jury answered special questions and returned a general verdict for plaintiffs for $4,500. The trial court sustained defendant's motion for judgment in its favor upon the answers to the special questions notwithstanding the general verdict. Plaintiffs have appealed.

The general facts may be summarized as follows: A north-and-south paved state highway, known as U. S. 75, about eighteen miles south of Topeka, is intersected by an east-and-west paved state

highway known as U. S. 50N. About 8:30 o'clock the morning of December 7, 1936, plaintiffs' son, Earl Ruff, was riding with Paul Vautravers in a Plymouth coupé automobile owned and driven by Vautravers and traveling south on U. S. 75. At the same time Jack Farley, driving a Lincoln-Zephyr automobile, was traveling west on U. S. 50N. Riding with Farley were Sam Wentworth and R. L. Gormley and his wife. The two automobiles collided in the intersection of the two highways, with the result that all of the occupants of the two automobiles were killed. Plaintiffs alleged the collision was caused by the negligence of Jack Farley in not observing and obeying caution and stop signs on U. S. 50N as he approached the intersection. Since a cause of action for wrongful death did not survive the death of the wrongdoer, plaintiffs could not bring an action against Jack Farley, or the administrator of his estate. (*Wright v. Smith*, 136 Kan. 205, 14 P. 2d 640; *Kelly v. Johnson*, 147 Kan. 74, 75 P. 2d 209, but see Laws 1939, ch. 233, which seems to change this rule.)

The action was brought against the Farley Machine Works Company, a Kansas corporation having its principal place of business at Arkansas City. The controverted point in the case involved in the judgment appealed from and presented here was whether the defendant corporation was liable to plaintiffs even though the negligence of Jack Farley caused the collision. Respecting this feature of the case plaintiffs in their petition allege: (1) That the defendant corporation is engaged in the business of manufacturing, repairing, selling and distributing certain oil-drilling tools and equipment used in the oil industry, and that it owned the Lincoln-Zephyr automobile driven by Jack Farley at the time of the collision. These allegations were conceded by defendant. (2) That at the time and place of the collision Jack Farley was the agent, officer and employee of the defendant company and was at the time using the highway and the automobile of defendant in going from Lawrence, Kan., to Arkansas City on business and in furtherance of the business of the defendant company. This allegation was specifically denied by the verified answer of defendant.

The evidence on this feature of the case is not seriously controverted and may be summarized as follows: Jack Farley owned about twenty-seven percent of the outstanding shares of the capital stock of the defendant company, was a member of its board of directors, and its general manager. The company was incorporated

for the purpose of the maintenance of general machine shops and stores, for the manufacture and repairing of mechanical tools; implements, appliances, supplies and equipment, and automobiles, trucks, vehicles and engines, and to acquire, own and sell such real and personal property as might be requisite in the proper conduct of its business and the promotion of its corporate purposes. The tools and equipment which it manufactured and with which it dealt were those used in drilling and producing oil. The trade territory of the company was west of a line drawn northward from Arkansas City, in Cowley county, to the east line of Harvey and McPherson counties, thence northwest to the state line. The place of the collision is about ninety miles east of this line. The trade territory extended as far west as Ness City and south of the cities of Chase and Pratt and north of Hays. In this territory it had between 200 and 300 people it contacted and with whom it did business; also in this territory it had four shops in addition to the one at Arkansas City. One was near Burrton, in Harvey county, one near Chase, in Rice county, one near Hays, in Ellis county, and one near Russell, in Russell county. Each of these shops was in charge of a foreman and such other help as was needed. Usually ten or twelve men were employed. It also employed a field man, Sam Wentworth, a stockholder of the company, who lived in Hutchinson, and whose principal duty was to contact oil-well workers and producers in the territory and get new business. Defendant also had a contract with the American Cable Company to sell on consignment its wire line in Kansas, and with Sprange & Company to sell its fishing tools. Sales of these materials were handled by defendant through its shops or through its general office at Arkansas City. Any complaint respecting wire line sold was adjusted by the American Cable Company by its representative, R. L. Gormley, who lived in Oklahoma. This business brought Gormley to some one of defendant's shops once in two or three months. He had no other connection with defendant. Defendant company solicited no business and transacted no business east of the east line of its trade territory, as above stated, except that on two or three occasions Sam Wentworth's father and his uncle, oil-well operators doing business at Chanute, in Neosho county, and at Madison, in Greenwood county, ordered by telephone from defendant's Arkansas City office wire line manufactured by the American Cable Company. These orders were handled by correspondence and the merchandise shipped from the Houston, Tex., warehouse of the American Cable Company.

Jack Farley was the general manager of the defendant company. His headquarters was at the general offices of the company in Arkansas City, where also was the office of Ruth Adamson, secretary-treasurer of the company. As general manager of the business Jack Farley spent much of his time out in the trade territory visiting the shops, supervising the work, checking up on accounts, and contacting new business. He had no occasion to do work for the company outside of its trade territory. He was paid a monthly salary, but neither he nor any of the employees of the company was docked for a few days' time taken to attend to private business, or for pleasure or vacation trips. Defendant owned the Lincoln-Zephyr automobile involved in the collision in question. It was purchased for the use of Farley in traveling over the trade territory and transacting business of the company, and he had permission to use it for his personal use and his private business, or on his hunting or vacation trips. The company paid the expense of keeping the automobile in repair and paid for gas, oil and other expenses incident to its operation in its business. It did not pay the operating expenses of the car when Farley used it on his private or personal business or for pleasure. Farlay carried with him an expense book in which he entered items of expense for himself and for the operation or repair of the automobile when used in the business of defendant, and these were paid by defendant. None of his personal expenses, or expense of operating the automobile, was charged to the company when he was on his personal business or pleasure.

The business affairs of the defendant company were directed by a board of five directors, most of whom lived within its trade territory. Farley met and conferred with those on frequent occasions. In addition to the stated meetings of the board of directors provided by the bylaws it was not unusual to have special meetings called. On December 1, 1936, Jack Farley directed the secretary to send out notices for a special meeting of the board of directors to be held at the office of the company in Arkansas City on December 7, 1936, at two o'clock p. m., to consider declaring a dividend on stock and such other important business as might be presented. The notices were duly sent out.

The defendant company was not in the oil business, did not take or deal in oil and gas leases, nor drill for oil and gas, nor operate oil and gas wells or leases. Apparently Farley and Wentworth did some of that on their own account. At some time prior to the

casualty Sam Wentworth had obtained an oil and gas lease on the Widener farm, about thirteen miles east of Lawrence. He and Jack Farley appear to have had some agreement by which Farley would finance the drilling of a well on this lease. About November 18, 1936, Jack Farley entered into a written contract with one T. A. Goff, an oil and gas well driller, by the terms of which Goff was to drill a well on the Widener land, and in accordance with the terms of that contract Jack Farley deposited in a bank at Bonner Springs, Kan., his personal check for $945 to be paid to Goff upon drilling the well to a stated depth. Farley and Wentworth wanted to be present when the well was drilled in, and Goff was to let them know when that was to take place. On December 4, 1936, a letter from Goff to Farley was received at the Arkansas City office of defendant. Miss Adamson opened it and read it. It was advising Farley when the well would be drilled in. Farley was then out in the trade territory and Miss Adamson located him at Stafford and read the letter to him over the telephone. That evening Farley drove into Hutchinson, Kan., and stayed all night. The next morning when he paid his bill, which included a telephone call to Goff, the clerk asked him if he wanted a receipt, and he replied no, that was his own. The morning of December 5, Farley and Wentworth left Hutchinson to go to the Widener farm in Johnson county to be present when the well was drilled. Gormley and his wife were at the hotel, and on learning the purpose of the trip concluded to go with them. Gormley drove his own car to Newton, where it was left, and he and his wife got into the automobile with Farley and Wentworth. They drove to Lawrence, where they registered at the hotel, and Farley and Wentworth spent much of the time at the well being drilled on the Widener place, which was drilled in sometime in the evening of December 6. Sometime that evening Farley called Miss Adamson, told her where he was, and that he planned to be at the board-of-directors meeting the afternoon of the 7th. He told others at Lawrence, or at the well, of the board meeting he wanted to attend. He and Wentworth and Mr. and Mrs. Gormley left the hotel at Lawrence the morning of December 7, and some forty-five minutes thereafter were involved in the collision. The distance from Lawrence to Arkansas City by Newton is 252 miles.

The court in its instructions told the jury, among other things, that before it would be warranted in finding for plaintiffs it must find by the evidence that at the time and place of the casualty Jack

Farley was acting as an agent, servant, employee or officer of the defendant company, within the scope of his authority and within the course of his business or employment with the company. No question is raised in this court about the correctness of any of the court's instructions. Pertinent special questions asked and answered by the jury are as follows:

"1. Did Jack Farley and Sam Wentworth go from Hutchinson, Kan., to Lawrence, Kan., and Johnson county, Kansas, the morning of December 5, 1936, for the purpose of going to and being present at the drilling in of an oil well by T. A. Goff on the Jacob V. Widener land in Johnson county, Kansas? A. Yes.

"3. If you answer question number 1 yes, then state if that was their sole purpose in going. A. We don't know.

"5. Did the Farley Machine Works Company have any interest in the Jacob V. Widener lease in Johnson county, Kansas, or in the well being drilled thereon by T. A. Goff? A. No.

"7. At the time of the accident in question, were Jack Farley and Sam Wentworth, or either of them, engaged in the business of the Farley Machine Works Company and acting within the scope of their employment? A. Yes.

"8. If you answer the next preceding question in the affirmative, then state particularly what business they or either of them were performing for the Farley Machine Works Company at said time. A. Going to directors' meeting at Arkansas City, Kan."

The answers to these questions were not objected to by counsel on either side. Our statute (G. S. 1935, 60-2918), in part, reads:

"When the special finding of facts is inconsistent with the general verdict, the former controls the latter, and the court may give judgment accordingly."

It is the duty of the court to construe the findings of fact so as to harmonize the facts found with the general verdict, if that reasonably can be done. If that cannot be done the general verdict must be set aside. These propositions are thoroughly established by many of our decisions.

The issue as to defendant's liability was clearly formed by the pleadings. Plaintiffs allege that at the time and place of the collision Farley was the agent, officer and employee of the defendant company and using the highway and automobile of defendant on business and in furtherance of the business of the defendant company. Defendant by its specifically verified denial of this allegation placed the burden of establishing it by proof upon plaintiffs.

Appellants argue that whether a negligent driver, causing an accident, was acting within the scope of his employment for the owner

at the time of the accident so as to render the master liable, must be determined by the jury where the evidence is conflicting, citing 10 Blashfield's Cyclopedia of Automobile Law and Practice, § 6637; 2 Mechem on Agency, 2d ed., § 1879, and many other authorities, including *O'Banion v. Railway Co.*, 65 Kan. 352, 69 Pac. 353. This rule and its soundness may be conceded, but here the controversy was submitted to the jury by special questions. By their answers to questions 1 and 5 the jury found Farley went from Hutchinson to Johnson county for the purpose of going to and being present at the drilling in of an oil well by Goff on the Widener land, and that the defendant company had no interest in the lease on the Widener land in Johnson county, or in the well being drilled thereon. Hence, the jury found this trip was not made in connection with any business of defendant. The answer to question 3 is not helpful to plaintiffs. They had the burden of establishing their contention that Farley went on this trip for some purpose other than to see the well on the Widener land drilled in, and that such purpose was one in which the defendant company had an interest. The jury was unable to find evidence sustaining that contention. Answering question 7, the jury made a general finding that Farley (or Wentworth) was engaged in the business of defendant and acting within the scope of his employment at the time of the accident, but in answer to question 8, when specifically interrogated as to what that business was, they answered, "Going to directors meeting at Arkansas City, Kan." So the jury found that Farley made this trip on business with which the defendant was not concerned, and that he had started back to his work for defendant and to the field where that work was done. We previously have noted that he was more than ninety miles from the territory in which he worked for defendant and more than 250 miles from Arkansas City, where he planned to resume his duties as an employee of defendant. Under these findings made by the jury the trial court, by sustaining defendant's motion for judgment upon the facts so found, necessarily held as a matter of law that Farley was not engaged in any duty for defendant, nor was he in the scope of his employment with defendant at the time of the collision in question. We concur in that view.

The liability of a master for the tortious acts of his servant is grounded upon the maxim of *respondeat superior* and is to be determined by considering, from a factual standpoint, the question of whether or not the tortious act was done while the servant was act-

ing within the scope of his employment. (2 Am. Jur., Agency 278, 279, §§ 359, 360.) In *Halverson v. Blosser*, 101 Kan. 683, 168 Pac. 863, it was held:

"An owner of an automobile is not liable for injuries caused in its operation by others, unless such others were servants or agents of the owner and acting in furtherance of his business." (Syl. ¶ 1.)

To the same effect, see *Snyder v. Eriksen*, 109 Kan. 314, 198 Pac. 1080, and *Mayhew v. DeCoursey*, 135 Kan. 184, 10 P. 2d 10.

Under the special findings of the jury the real question of law here is, Did Farley resume his work for defendant when he started from Lawrence to go to Arkansas City? A short answer to this is that Farley left the business of his master on the morning of December 5 for business of his own, and it was his own business to get back to the business of his master. There are numerous decisions holding that when a servant leaves his master's business to go to some other place and attend to business of his own he does not resume his master's business by simply starting to return, but resumes it when he actually returns. The following cases so hold, several of them dealing specifically with liability of the master in automobile collision cases when the servant is on his return to resume work. The list is not designed to be complete. *Vallery v. Hesse Bldg. Material Co.*, (Mo. App.) 211 S. W. 95; *Fletcher v. Meredith*, 148 Md. 580, 129 Atl. 795; *Carder v. Martin*, 120 Okla. 179, 250 Pac. 906; *Brinkman v. Zuckerman*, 192 Mich. 624, 159 N. W. 316; *Danforth v. Fisher*, 75 N. H. 111, 71 Atl. 535; *Gousse v. Lowe*, 41 Cal. App. 715, 183 Pac. 295; *Curry v. Bickley*, 196 Ia. 827, 195 N. W. 617; *Bishop v. Farm & Home Savings & Loan Ass'n*, (Tex. App.) 75 S. W. 2d 285; *Humphrey v. Hogan*, (Mo. App.) 104 S. W. 2d 767.

See, also, *Kemp v. Railway Co.*, 91 Kan. 477, 138 Pac. 621, and *Dale v. Armstrong*, 107 Kan. 101, 190 Pac. 598. The authorities cited contain citations of many other authorities to the same effect. In one or two of the opinions it was noted that there are a few cases which seem to take a contrary view, but they are in the decided minority. The great weight of authority is in harmony with the rule of the cases cited, which we approve as being the sounder doctrine.

Counsel have cited cases in which there was a slight deviation from duty—the degree of which varied—in some of which the master was held liable, in others not. This cannot be said to be a case of slight deviation from duty. The time consumed and the distance from place of duty classify it as one of temporary abandonment of duty, as that term is sometimes used in the opinions.

No specific force is to be attached to the fact that the first important thing Farley planned to do for defendant when he got back to his work was to attend and officiate at a directors' meeting. That happened to be the thing then to be done—it might have been any of his other duties. The material point is that he was going back to the field of his work for defendant to resume work which needed to be done for defendant. Appellants argue that it was necessary for Farley to go from Lawrence to Arkansas City in order to perform the main act which it was his duty to perform—to preside at the directors' meeting and to inform the directors of the important matters to come before them; that this was a service to the company, important to it, and Farley started to make the trip, hence that he was in fact performing a service for defendant, or at least doing a thing incidental to his duties, and one that contributed indirectly to the service he was to perform for defendant after he should reach Arkansas City. Such force as there is to this argument is weakened when we consider that had Farley gone to New York, or to Europe, on business of his own, and planned to return to Arkansas City by a fixed date to resume his duties for defendant, and injury had resulted from his negligence soon after he started, or anywhere on his return trip, the fact that defendant could use his services when he got back to his work would not be enough to hold defendant financially liable for his negligence en route home.

Appellants make a point of the fact that after the collision and on December 11, 1936, at a special meeting of defendant's board of directors, when some new officers were chosen, appropriate separate resolutions of condolence respecting the death of Jack Farley and of Sam Wentworth were adopted and sent to their respective families, and in the preamble to the resolution respecting Wentworth it was said that he "lost his life on December 7, 1936, while in the line of duty and serving the best interests of his employer." No similar wording was in the resolution respecting Farley. In view of the fact Wentworth was not charged with negligence in this case, the general purpose of the resolutions and of testimony tending to show that all the facts pertaining to the purpose of the trip and the cause of the collision were not known to the directors, the weight to be given to this evidence was for the jury. There is no reason to say the jury did not consider this together with all the other evidence when they answered the special questions. As a separate item of evidence we regard it as no longer important.

In *Kennedy v. Hull & Dillon Packing Co.*, 130 Kan. 191, 289 Pac. 402, the duties of Kennedy as a traveling salesman required him to travel over the highway where he was killed. That is not the case here. In *Stapleton v. State Highway Comm.*, 147 Kan. 419, 76 P. 2d 843, Stapleton had been requested by his superior officer to move his household goods from one location to another so he could better perform his duties, and was doing so at the time he was killed. No such request had been made in this case. In *Tierney v. Telephone Co.*, 114 Kan. 706, 220 Pac. 190, the employee was directed by his superior to ride in a certain truck and go to a certain town and perform certain duties for his employer, and to assist the driver of the truck en route, and while doing so he sustained an injury for which he was permitted to recover. No such directions were given to Farley in this case. Similar distinctions are readily observable between the facts found in this case and those in *Thomas v. Manufacturing Co.*, 104 Kan. 432, 179 Pac. 372; *McDonnell v. Swift & Co.*, 124 Kan. 327, 259 Pac. 695; *Kearns v. Reed*, 136 Kan. 36, 12 P. 2d 820; *Woods v. Jacob Dold Packing Co.*, 141 Kan. 363, 41 P. 2d 748, and cases from other jurisdictions, all of which are cited and relied upon by appellants. We think the doctrine that a general manager of a corporation is its general agent, and for some purposes may be regarded as the corporation itself, as discussed and applied in *A. & P. Rld. Co. v. Reisner*, 18 Kan. 458, has no application here. If this doctrine were applied here it would apply to any negligent act of Farley if he left defendant's business three weeks instead of three days and if he traveled several thousand miles instead of several hundred from the place of work for defendant. We find no legal authority for applying the doctrine in such a case. We have examined all the authorities cited by appellants and find nothing in any of them, not specifically mentioned herein, which requires a holding contrary to the conclusion we have reached in this case.

From what has been said it follows that the judgment of the trial court must be affirmed. It is so ordered.