**MARRIOTT et al. v. NATIONAL MUT. CAS. CO. et al.**

No. 4330.

United States Court of Appeals Tenth Circuit.

March 25, 1952.

Emmet A. Blaes, Wichita, Kan. (W. D. Jochems, J. Wirth Sargent, Roetzel Jochems, Robert G. Braden, S. C. Durbin, 'J. Francis Hesse, Wichita, Kan., were with him on the brief), for appellants.

I. H. Stearns, Wichita, Kan. (E. P. Villepigue and Leo R. Wetta, Wichita, Kan., were with him on the brief), for appellees.

Before PHILLIPS, Chief Judge, and MURRAH and PICKETT, Circuit Judges.

PICKETT, Circuit Judge.

The Marriotts brought this action against Womack, S & C Transport Company, Riss and Company, and the National Mutual Casualty Company, to recover damages for the wrongful death of their minor child, resulting from Womack's alleged negligent operation of a transport truck upon a Kansas highway. The case was tried to the court without a jury and a judgment was entered against Womack only. The Marriotts have appealed.

Womack was the owner of a 1947 GMC transport truck and a Freuhauf trailer. Prior to January 16, 1947, he entered into a written lease of the truck to the S & C Transport Company,[1] which was a licensed carrier of freight with interstate permits over routes in Kansas, Oklahoma, Colorado, Missouri and Nebraska.[2] The original lease was not introduced in evidence.

---

1. Herein referred to as S & C, or company.

2. In Kansas, public carriers, before using the highways of that state, must comply with the statute relating to such carriers. To protect the interest of the public the carrier is required to carry liability insurance. Kan.G.S.1949, Sec. 66–1,128 reads:

"Liability insurance required before certificate or license issued. * * * such applicant shall have filed with, and the same has been approved by, the state corporation commission, a liability insur-

Ralph Eisminger, the Secretary and Treasurer of S & C identified a printed lease form which he stated was used in preparing the lease with Womack. The lease form provided a space for the insertion of a description of the motor vehicle equipment to be leased. It recited that S & C carried public liability insurance as required by law. Other pertinent provisions were:

"Now Therefore, It Is Hereby Agreed between the parties hereto that for the consideration as stated in Paragraph 3 below, Lessor does hereby lease unto Lessee for the period of not less than ...... months from the date first above written, the Motor Vehicle Equipment above described with driver and subject to the following conditions:

"1. That during the existence of this lease the Motor Vehicle Equipment above described shall be under the complete control of the Lessee. * *

"2. Lessee agrees to assume and will pay all road tax due on account of the use of the above described equipment.

"3. As consideration, Lessee agrees to pay Lessor the sum of 90% of the gross revenue less all operating expenses.

"4. That either party hereto may cancel this lease on ten day written notice to the other party and to the above named Commissions.

"5. Lessee's responsibility for any and all liability under this contract shall be only during the operation of the above equipment, while the same is hauling Freight on the routes of the Lessee."

The only testimony relating to the term of the lease was that the form was filled in with a number of days, which was usually ten days. On June 6, 1947, the Kansas Corporation Commission issued to S & C a wire authority permitting it to use the Womack truck and trailer on the Kansas highways for a period of ten days.

The home office of S & C was at Hutchinson, Kansas, and Womack resided there. Late in the afternoon of June 16, 1947, Womack left Hutchinson to deliver a consignment of salt for S & C at Miami, Oklahoma. He did not arrive at this destination in time to deliver the load that night and it was not unloaded and delivered to the consignee until the morning of the 17th. After the delivery of the salt, Womack left to return home by way of Tulsa, Oklahoma, where he thought he would be able to pick up a load of paper for S & C and deliver the same at Hutchinson. The paper was not available and Womack so advised S & C by telephone. Eisminger testified that usually there was paper at Tulsa to be hauled for his company and that

ance policy in some insurance company or association authorized to transact business in this state, in such reasonable sum as the commission may deem necessary to adequately protect the interests of the public * * * but in no event shall such sum be less than * * * which liability insurance shall bind the obligors thereunder to pay compensation for injuries to persons and loss of or damage to property resulting from the negligent operation of such carrier. * * *"

Pursuant to the Kansas statutes, S & C obtained a policy of insurance from the defendant, National Mutual Casualty Company, covering its trucking operations in the State of Kansas. This liability policy provides in part:

"* * * the company waives a description of the motor vehicles, trailers or semitrailers insured hereunder and the policy is hereby amended and extended so as to cover any and all motor vehicles, trailers and semitrailers operated or used by the assured pursuant to the certificate, permit or license issued by the State Corporation Commission of Kansas.

"Nothing contained in the policy or any endorsement thereon, nor the violation of any of the provisions thereof by the assured, shall relieve the company from liability thereunder as an insurer; provided, that nothing herein shall be construed to prohibit the company from providing for the right of reimbursement or subrogation as between itself and the assured in cases where the carrier is operating equipment in violation of the permit, license or certificate issued to him by the Commission."

had it been available, Womack would have transported it for the company, but that it would have been necessary to obtain additional wire authority from the Kansas Corporation Commission and that he would have made oral arrangement over the telephone with Womack to use his truck for that purpose. Womack then made arrangements with Riss and Company to transport a load of valves for it from Tulsa to Wichita. Riss and Company obtained wire authority from the Kansas Corporation Commission for this purpose and entered into a one way trip arrangement with Womack. After the delivery of the valves at Wichita, Womack continued on his return trip to Hutchinson. It was during this portion of the return trip that the minor child of the Marriotts was run over and killed by the truck. The trial court found that the injuries to the child were due to the negligence of Womack and entered the judgment against him for $5000 from which no appeal was taken.

S & C and the casualty company defended upon the ground that Womack was not acting within the scope of any employment with S & C at the time of the injuries to the child. The trial court found that at the time of the injuries there was no contract either written or oral in effect between S & C and Womack. It found that the lease between these parties was a trip lease which expired June 16, 1947; that at the time of the injuries to the child, Womack was not acting within the scope of his employment; and concluded that S & C neither controlled nor had the right to control Womack after June 16, 1947.

The terms of the written lease determine the relationship and the liability of the parties. It is evident that the form used was designed to lease motor vehicle equipment for an indefinite period. The term fixed in the form was "for not less than ...... months" and provided for cancellation by either party on ten days written notice. The form clearly was not for trip leases and the testimony of the company officer that the Womack lease was for one trip is merely his interpretation. The effect of his testimony was that the term of the lease was fixed by filling in the blank, usually inserting ten days. The defendants place this construction upon the testimony, as in their brief they state that "no doubt the word 'months' was deleted and the word 'days' used." There was no evidence that any other portion of the form was stricken out. According to the evidence the lease was for an indefinite period "of not less than ten days" subject to cancellation on ten days notice. The trial court's finding that the lease had expired was in direct conflict with the express provisions of the lease. The court apparently construed the lease to read "not more than ten days," and then relied upon the date of the ten day wire authority to establish the date of the lease, as there was no proof of the date of its execution or when it was to become effective. Eisminger also testified that the company did not attempt to control the activities of Womack after he unloaded at Miami and that it had no right to do so. This also is his construction of the lease, the provisions of which are to the contrary. Paragraph 1 of the lease provides "That during the existence of this lease the Motor Vehicle Equipment above described shall be under the complete control of the Lessee." He recognized, however, that S & C would have had the right to control Womack after the delivery if there was Commission authority. His testimony with respect to this was as follows: "Q. Did you have a right to do so?—A. Yes, I would have had a right to do so if I had a telegram. Q. Well, if you hadn't had a telegram is what I am talking about.—A. No. Q. As it stood, without any additional telegram, you had no right to exercise control over him after he left Miami?—A. No." This control is further evidenced by the fact that upon return Womack reported to S & C the activities of the truck on the trip including the accident. While this report was being made out, employees of S & C loaded the truck and trailer with another load for interstate transportation. In determining whether the lease had expired, S & C and the casualty company, as did the trial court, put importance upon the expiration of the ten day wire authority and the failure of the company to have

statutory authority from the Commission for Womack to be upon the highway. The wire authority was, however, no part of the lease arrangement between Womack and S & C, and did not determine or have any effect upon the rights and obligations of the parties to the lease. The statutory responsibility to obtain the necessary permits was upon S & C. It is true that S & C could not legally put the truck on Kansas highways without the required permit, but it could not escape liability for injuries to the public because it had failed to comply with the Kansas law and the Commission's regulations. We think that under the terms of the lease S & C had the right to control Womack on the trip to Miami and return, and that it was responsible for injuries to the public unless Womack, as contemplated by Sec. 5 of the lease, was at the time of the injuries hauling freight for others or acting beyond the scope of his employment. Foster v. Commercial Standard Ins. Co., 10 Cir., 121 F.2d 117. Under Kansas law, the right to control an employee fixes the liability of the employer, not the exercise of that right. Schroeder. v. American National Bank, 154 Kan. 721, 121 P.2d 186; Davis v. Julian, 152 Kan. 749, 107 P.2d 745, 750; Dobson v. Baxter Chat. Co., 148 Kan. 750, 85 P.2d 1.

When Womack, en route home, undertook to transport the goods from Tulsa to Wichita for Riss & Co., he was on an enterprise of his own which would constitute a temporary departure from his employment by S & C. The personal business, however, had been accomplished and Womack had resumed the purposes of his employment by the company and was continuing on to Hutchinson over routes of S & C. Ordinarily where an employee deviates or departs from his employment and thereafter resumes his duties, the relation of master and servant is restored. United States v. Wibye, 9 Cir., 191 F.2d 181; Ruff v. Farley Machine Works, 151 Kan. 349, 99 P.2d 789, 793; Meinecke v. Intermountain Transp. Co., 101 Mont. 315, 55 P.2d 680; Restatement, Agency, Sec. 237. See annotations in 122 A.L.R. 870.

The contention of S & C and the casualty company that upon the return trip Womack was not traveling pursuant to any certificate or permit of S & C, therefore there was no liability, is without merit. S & C registered the Womack truck and trailer with the Kansas Commission and obtained authority to use it in its public carrier business. Armed with this authority and its lease of the equipment, it initiated the Miami trip under its general franchise or certificate of convenience. It was under this general franchise or certificate of convenience that the merchandise was being delivered. Womack had no other authority. To permit S & C and its insurer to escape liability because the special authority covering this equipment had expired en route would deprive the public of the very protection which the statute was designed to give. To so hold would exclude liability in cases where equipment not properly registered was used or where the injuries occurred after the expiration of a special authority and in the course of completing the delivery of the freight or passengers.

The Kansas statute was enacted for the purpose of requiring all persons using the Kansas highways as commercial carriers to carry sufficient insurance on their motor equipment to protect the public in case of injuries sustained from the negligent operation of the same. The statute became a part of the policies issued to carriers operating under the statute. Henderson v. National Mutual Casualty Co., 164 Kan. 109, 187 P.2d 508; Dunn v. Jones, 143 Kan. 218, 53 P.2d 918. It is fundamental that a statute designed to protect the public, if its language permits, must be construed in the light of the legislative intent and purposes it sought to achieve. It is entitled to a broad interpretation so that its public purposes may be fully effectuated. United States v. American Trucking Ass'n, 310 U.S. 534, 543, 60 S.Ct. 1059, 84 L.Ed. 1345; McDonald v. Thompson, 305 U.S. 263, 59 S.Ct. 176, 83 L.Ed. 164; Piedmont & Northern Ry. v. Commission, 286 U.S. 299, 311, 52 S.Ct. 541, 76 L.Ed. 1115; Adler v. Northern Hotel Co., 7 Cir., 175 F.2d 619; Binkley Mining Co. v. Wheeler, 8 Cir., 133 F.2d 863, 871, certiorari denied 319 U.S. 764, 63 S.Ct. 1326, 87 L.Ed. 1715; A. W. Stickle Co. v. I. C. C., 10 Cir., 128 F.2d 155, 159,

certiorari denied 317 U.S. 650, 63 S.Ct. 46, 87 L.Ed. 523; Trinity Universal Ins. Co. v. Cunningham, 8 Cir., 107 F.2d 857, 860, dismissed 310 U.S. 654, 60 S.Ct. 1074, 84 L.Ed. 1419; Van Doren v. Wolf, 112 Kan. 380, 211 P. 144.

An authorized carrier having its motor equipment, or other equipment under its control, on the highway for the purpose of its business, comes within the requirements of the statute and the coverage of insurance issued pursuant thereto, whether the equipment is loaded or empty. We take the view that under its lease arrangements, S & C had the same responsibility as though Womack had been driving a truck owned by the company on the trip to Miami and the necessary and incidental return trip. Under these circumstances, S & C, or its insurers could not escape liability for injuries to the public caused by the negligent operation of the truck. Hodges v. Johnson, D.C., 52 F.Supp. 488.

We do not have a factual situation similar to that presented to the Second Circuit in Costello v. Smith, 179 F.2d 715, 16 A.L.R. 2d 954. There the lease was specific and provided that it was for a one way trip. It specifically provided that the truck was to be returned to the owner upon delivery of the freight at its destination, and the lessor was relieved of any further responsibility.

Judgment of the trial court is reversed and remanded with instructions to enter judgment against defendants, S & C Company and The National Mutual Casualty Company, consistent with the views herein expressed.

Lindley, C. J., dissented.