**JONES et al. v. GOODMAN et al.**
**No. T–2.**

United States District Court.
D. Kansas.
Aug. 12, 1953.

---

112

Jerome S. Koehler and Walter G. Klamm, Kansas City, Kan., for plaintiffs.

T. F. Railsback, Kansas City, Kan., for defendants.

MELLOTT, Chief Judge.

Defendants' motion to dismiss the second amended complaint raises several questions which have been discussed by counsel at oral hearings and in lengthy, well-prepared briefs. A summary of the facts pleaded and the actions heretofore taken by the parties and the court may bring into focus the issues presented.

George V. Jones, a 36-year-old citizen of Iowa in the employ of a citizen of Nebraska as a transport truck driver, received severe injuries on January 13, 1948, in a collision of vehicles on a Kansas highway, which, it is averred, resulted from the negligence of another truck driver, a citizen of Kansas and a member of the partnership which owned the truck he was driving. After the collision, Jones was confined in a hospital in Kansas City, Kansas until September 11, 1948, on which date he was re-moved to a hospital in Omaha, Nebraska, where he died on October 25, 1948. His "sole and only heirs at law and next of kin; all of whom were partially dependent upon * * * [him] for support"[1] were two brothers and three sisters, ranging in age from 43 years to 52 years, the eldest of whom, a resident of Iowa, was appointed, in that State, administrator of his estate and is one of the plaintiffs.

The plaintiff, Howerter, was the employer of the deceased at the time of his injury. It is averred he was operating under the Nebraska Workmen's Compensation law, his co-plaintiff, American Motorists Insurance Co., being his insurer. They, it is alleged, "have joined in this action as party plaintiffs by mutual consent, for the purpose of being subrogated and reimbursed out of any damages that may be recovered in this action by said plaintiff administrator, to the extent of the financial loss sustained by them * * *." The amount so claimed under Count Three of the second amended complaint is:

| | |
|---|---|
| Weekly compensation paid deceased | $ 722.00 |
| Medical and hospital expenses | 7,826.30 |
| Burial expenses | 150.00 |
| Amount paid to Nebraska Compensation court for benefit Second Injury Fund[2] | 500.00 |
| Total | $9,198.30 |

The original complaint was filed in this case September 1, 1949. It included, as a defendant, Hawkeye Casualty Co.,[3] an Iowa corporation, which had issued a policy of insurance covering the operation by the defendants of trucks on the highways of Kansas. G.S.Kan.1935, 66–1,128. The time to plead was enlarged by order of court and a motion to dismiss was filed by the defendants on April 25, 1950. That mo-

1. The quoted language appears in Paragraph 15 of the second amended complaint.

2. In Paragraph 28 of second amended complaint it is stated: "Since the deceased left no 'dependents,' as defined by said compensation statutes, said plaintiffs paid the further sum of Five Hun-dred ($500) Dollars to the Nebraska Workmen's Compensation Court for the benefit of said Second Injury Fund, as provided under § 48–124 and § 48–128 * * * [R. S. Nebraska 1943 as amended to 1947 inclusive] * * *."

3. Hereinafter Hawkeye.

tion was not argued or briefed. While it was pending, counsel for the plaintiffs moved to dismiss as to Hawkeye because of lack of diversity. The motion was sustained on November 17, 1950, and amended complaint was filed on that date. Hawkeye was not named as a party defendant in that pleading; but references in it to Hawkeye and the issuance of the policy were attacked by a motion to strike. A motion to dismiss was also filed. The motions were argued and briefs submitted. On January 14, 1952, the court entered an order sustaining in part and denying in part the motion to strike and directing that a complete amended complaint be filed. The second amended complaint was filed January 25, 1952. Additional briefs upon the questions raised in the motion to dismiss have now been filed.

Each of the three complaints contains three separate counts. Counsel for plaintiffs, in their reply brief, characterize the action as follows:

"This is an action to recover damages against negligent third parties for wrongful death as a result of injuries received in this state predicated upon G.S.Kans. § 60–3201 [G.S.1935 as amended by Sec. 1, Ch. 233, L.1939] [4] the survival statute and § 60–3203 [G. S.Kans.1935 as amended by Sec. 2, Ch. 233, L.1939; L.1947, Ch. 319] [4] and 60–3204 [G.S.Kans.1935] [4] wrongful death statutes. The action is brought by an Iowa administrator of the deceased for the benefit of his estate and next of kin under authority of G.S. Kans. [1949?] 59–1708.[5] The plaintiffs, Howerter and American Motorists [Ins. Co.] have joined in this action by virtue of their rights of subrogation arising in the state of Nebraska."

It will be sufficient for present purposes to summarize the allegations of the second amended complaint. In Count One, after alleging the acts of negligence relied upon, it is stated the administrator's right to recover damages is predicated upon laws of the State of Iowa, set out therein, which, it is averred, are "similar" to sections 60–3201, 60–3203 and 60–3204 of the Kansas Code, supra. In the concluding paragraph of this count it is stated that, by reason of the wrongful acts of the defendants, the injuries received and the damages sustained by the deceased during his lifetime for hospitalization and medical expense, pain and suffering, disfigurement and humiliation and loss of earnings, his estate and his heirs and next of kin suffered damages in the total sum of $11,500.

In Count Two it is alleged that the estate of the deceased and his heirs and next of kin suffered damages in the total amount of $3,500, consisting of funeral and burial expenses of $500 "which the estate * * *, his heirs and next of kin, became liable to pay" and $3,000 for the loss suffered by his surviving brothers and sisters and next of kin for the "reasonable present and prospective pecuniary benefits accruing to them from said estate; * * * [and for their] mental anguish and bereavement, loss of his society and companionship and loss of his comfort and protection * * *." The averments in Count Three of the second amended complaint have been summarized above. (See Paragraph 3.) Recapitulating, the aggregate amount of $15,000 is sought by the administrator under the survival statute and the death by wrongful act of Kansas, while his co-plaintiffs Howerter and American Motorists Insurance Co. claim "a lien upon and to receive reimbursement from the proceeds * * * to the extent of * * * payments * * * made, under § 48–118 of * * * [the] Nebraska statutes."

The effect of the dismissal of Hawkeye, a proper, but not an indispensa-

4. The statutes as amended are shown in G.S.Kans.1949 as 60–3201, 60–3203 and 60–3204. The amendments will be referred to later.

5. This section was enacted in 1939 as part of the revision of the probate and property laws. It reads: "Nonresident fiduciary may sue and be sued. A fiduciary duly appointed in any other state or country may sue or be sued in any court in this state, in his capacity of fiduciary, in like manner and under like restrictions as a nonresident may sue or be sued."

ble or necessary, party may be passed without extended discussion. In the determination of this court's jurisdiction on the ground of diversity of citzenship, only indispensable parties are to be considered.[6] The action was brought within two years after the cause of action accrued.[7] This court permitted the dismissal of Hawkeye, as contemplated by Rule 21, F.R.C.P., 28 U.S.C.A., retaining jurisdiction, (it is believed), with retroactive effect, of the indispensable parties, viz., the owners and operators of the truck alleged to have caused the injuries to the deceased. Some of the cases supporting this view are set out in the margin.[8]

A question discussed by the parties at some length is whether the suit should be dismissed for misjoinder of parties plaintiff. Rule 21 states: "Misjoinder of parties is not ground for dismissal of an action." In a recent opinion by Judge Delehant of Nebraska [9] it was pointed out that "(t)he courts have applied the rule in accordance with its unmistakable language. [Citing cases.]" This court does likewise and declines to dismiss the action for misjoinder. But it is proper to determine whether the former employer of the deceased and his insurance carrier, or either of them, are, under the pleadings, proper parties. The present discussion will, however, be limited to the former employer, Howerter.

It is well established that an insurer, which has paid in accordance with its contract of insurance, becomes subrogated to the rights of the insured. If the loss insured against is paid in full, then an action against the wrongdoer to recover in tort must be maintained in the name of the insurer. If payment in full has not been made, "both the insured and the insurer own portions of the substantive right against the wrongdoer and should appear in the litigation in their own names." [10]

It seems to be obvious, from an examination of the present complaint, that all payments made to, and in behalf of, the injured workman were made by the insurance carrier, American Motorists Insurance Co., and that Howerter has not paid, or become obligated to pay, any additional amounts. The fact that the Nebraska statute, which is pleaded in the complaint,[11] subrogates "the employer" to the right of the employee or his dependents against a "third person" who caused the injury, does not, in this court's judgment, make it necessary that he remain in the action as a plaintiff. However, no order dismissing him as a party is being entered at this time.

Before discussing the claimed right of the insurer to recover as a subrogee, consideration should be given to whether the action, in its present form, can be maintained by the Iowa administrator. Matters pertaining to the substantive right of recovery under a death by wrongful act statute are governed by the law of the state where the injury resulting in death occurred.[12] This includes "the right to recover, the nature of the right, and the party in whom it is vested * * *." [13] While recognizing this rule, counsel for the plaintiffs espouse the view that the lex loci domicili should be applied

6. Jones v. Box Elder County, 10 Cir., 52 F.2d 340, certiorari denied 285 U.S. 555, 52 S.Ct. 456, 76 L.Ed. 944.

7. G.S.Kan.1935, 60–306, clause third.

8. States v. John F. Daly, Inc., D.C., 96 F. Supp. 479 and cases therein cited; O'Neal v. National Cylinder Gas Co., D. C., 103 F.Supp. 720, 724; Gate-Way v. Hillgren, D.C., 82 F.Supp. 546, 552.

9. Stevenson v. Richardson County, Nebraska, D.C., 9 F.R.D. 437, 439.

10. Gas Service Co. v. Hunt, 10 Cir., 183 F.2d 417, 419; United States v. Aetna Cas. & Surety Co., 338 U.S. 366, 70 S. Ct. 207, 94 L.Ed. 171. Cf. Kansas Electric Power Co. of Leavenworth, Kan. v. Janis, 10 Cir., 194 F.2d 942; Wise v. Phoenix Indemnity Co., 173 Kan. 372, 246 P.2d 308.

11. § 48–118, R.S.Nebr.1943, as amended.

12. Burlington Transp. Co. v. Stoltz, 10 Cir., 191 F.2d 915; Wild v. Atlantic Refining Co., 3 Cir., 195 F.2d 151. See also A. L. I. Restatement, Conflict of Laws, §§ 391, 392 et seq.

13. Betts v. Southern Ry. Co., 4 Cir., 71 F.2d 787, 789.

in the distribution of the amount recovered in such an action. That, it is believed, is unsound. In subdivision "c" of the comment under § 393, Restatement, Conflict of Laws, it is stated:

> "The distribution of damages recovered under a wrongful death statute is not determined by the law of the decedent's domicile * * * because such damages constitute no part of his estate. They ordinarily represent a special fund to be distributed to certain designated beneficiaries, and the distribution depends upon the law of the state which, by its wrongful death statute, creates the cause of action."

While the precise question has arisen seldom under the Kansas cases,[14] it has many times been held that the special fund may be distributed only to the designated beneficiaries.[15] The statute,[16] it will be noted, specifically provides that the damages which may be awarded, "must inure to the exclusive benefit of the surviving spouse and children, if any, or next of kin".

But, argue counsel for the plaintiffs, "recovery for wrongful death under the laws of both Kansas and Iowa inure to the benefit of the surviving spouse, children or parents free of debts. The only exception is that under the Iowa law when the recovery extends to the next of kin beyond parents that the 'free of debt' provision does not apply." Assuming, without deciding, that the statement is correct, recovery for the purpose of paying the debts of the estate in Iowa would contravene the repeatedly announced policy of the Kansas act. Moreover, the acts of the two states do not seem to be similar. The Kansas act[16] is modeled after, and has the same general purpose as, Lord Campbell's Act. The "right of action created by * * * [it] is founded on a new grievance, viz.: causing the death, and is for the injuries sustained thereby by the widow and children or next of kin of the deceased * * *."[17] Under the Iowa statute, I.C.A. § 611.20, "unlike Lord Campbell's Act, no new cause of action is created by the wrongful death, but rather, the cause of action accruing to the injured person survives his death. * * * An action under the Iowa death statute is in effect an action only to recover for the benefit of the heirs * * * what they might have inherited had the decedent lived out his normal expectancy, * * *. In effect, cognizance is only taken of what such decedent might have saved, not on what he might have expended upon his heirs in his lifetime had his life not been

14. Hartley v. Hartley, 71 Kan. 691, 81 P. 505; Bolinger v. Beacham, 81 Kan. 746, 106 P. 1094, annotation 65 A.L.R. 566.

15. Kansas Pac. Ry. Co. v. Cutter, 16 Kan. 568, 569; Perry, Adm'r, v. St. Joseph & W. R. Co., 29 Kan. 420, 422; Jeffries v. Farmers' Union Co-op. Mercantile & Elevator Co., 103 Kan. 786, 176 P. 631; White v. Atchison, T. & S. F. Ry. Co., 125 Kan. 537, 265 P. 73, 59 A. L.R. 749; Cudney v. United Power & Light Corp., 142 Kan. 613, 51 P.2d 28, 101 A.L.R. 635.

16. G.S.Kan.1949, § 60-3203: *"When action for death caused by wrongful act or omission lies; limitation of action; damages.* When the death of one is caused by the wrongful act or omission of another, the personal representatives of the former may maintain an action therefor against the latter or his personal representative if the former might have maintained an action had he lived against the latter for an injury for the same act or omission. The action must be commenced within two years. In any such action, the court or jury may award such damages as may seem fair and just under all the facts and circumstances, but the damages cannot exceed fifteen thousand dollars and must inure to the exclusive benefit of the surviving spouse and children, if any, or next of kin, to be distributed in the same manner as personal property of the deceased. Damages may be recovered hereunder for, but not limited to: (a) Mental anguish, suffering or bereavement; (b) loss of society, companionship, comfort or protection; (c) loss of marital care, attention, advice, or counsel; (d) loss of filial care or attention; and (e) loss of parental care, training, guidance or education."

17. Perry, Adm'r, v. St. Joseph & W. R. Co., footnote 15.

cut off untimely. * * *" [18] Recovery is sought in the instant case under the Kansas death by wrongful act statute, not for the pecuniary loss suffered by the beneficiaries because of the death of the deceased, as contemplated by the act, but rather for the loss of his estate—minimizing or decreasing its size—by his premature death.

Whether an Iowa administrator, in any event, can maintain an action, in Kansas, to recover under its death by wrongful act statute is doubtful. In the early case of Limekiller, Adm'x v. Hannibal & St. J. R. Co.,[19] it was held that a Missouri administratrix, prohibited by the law of that state from maintaining an action for wrongful death in the state of her appointment, "is not entitled to any greater power or rights in Kansas than she is in Missouri * *" and that the Kansas action should be dismissed. The case has been frequently cited with approval [20] and has not been overruled. It seems to be apposite here.

Nor does the amendment to old Section 422 of the Kansas Civil Code—now 60-3204 —obviously enacted in response to the suggestion made by the court in the Limekiller case, supra,[21] aid the plaintiffs. The present action was not brought by the next of kin *qua* next of kin of the deceased but rather by an Iowa administrator.

Learned counsel for the plaintiffs, no doubt conscious of the pitfalls awaiting the administrator in his attempt to recover under the Kansas death by wrongful act stat-

ute, seek to avoid some of them by relying upon the Kansas survival statute. Upon brief it is stated:

> "This action is not brought solely under the Kansas wrongful death statutes 60-3203 and 60-3204 but also under the survival statute of 60-3201 * * *."

Section 60-3201 is set out in the margin,[22] the amendment made in 1939 being indicated by italics. Prior to 1939 it was well-settled that the remedies under the survival statute and under the death by wrongful act statute were not concurrent. "(A)n administrator could not maintain an action under * * * [both] for the same injury. When death results from *wrongful acts* * * * [the statute based on Lord Campbell's Act] is intended solely to apply." [23] This view has been followed consistently by the Supreme Court of Kansas, although later criticized by Judge Brewer, who was a member of that Court at the time it was expressed.[24] One of the most recent reiterations of it is contained in syllabus 1 by the court in Kelly v. Johnson,[25] decided in 1938, reading:

> "Following Wright v. Smith, 136 Kan. 205, 14 P.2d 640, it is held that a right of action for causing wrongful death is exclusively conferred by G.S. 1935, 60-3203, and not by G.S.1935, 60-3201, and that such a cause of action does not survive the death of the wrongdoer and cannot be maintained against his administrator."

18. Van Wie v. United States, D.C., 77 F. Supp. 22, loc. cit. 47.

19. 33 Kan. 83, 5 P. 401, 405.

20. Dale v. Atchison T. & S. F. Railroad Co., 57 Kan. 601, 603, 47 P. 521; Railway Co. v. Mills, 57 Kan. 687, 690, 47 P. 834; Metrakos v. Kansas City, M. & O. Railway Co., 91 Kan. 342, 344, 137 P. 953.

21. The court said: "If there is any ommission in the statutes, the remedy is with the legislature. Instead of requiring the instituting of an action in the name of the personal representative of the deceased, * * * the legislature can authorize an action * * * in the name of the widow or children, if any, or in the name of some one next of

kin to the deceased." 33 Kan. loc. cit. 90, 5 P. loc. cit. 405. The amendment so provided.

22. "What causes of action survive. In addition to the causes of action which survive at common law, causes of action for mesne profits, or for an injury to the person or, to real or personal estate, or for any deceit or fraud *or for death by wrongful act or omission*, shall also survive; and the action may be brought notwithstanding the death of the person entitled or liable to the same."

23. McCarthy, Adm'r v. Chicago, R. I. & P. Railroad Co., 18 Kan. 46, 52.

24. Hulbert v. City of Topeka, C.C., 34 F. 510.

25. 147 Kan. 74, 75 P.2d 209.

■ But does the amendment to § 60-3201 have the effect of making the remedies under the survival statute and under the death by wrongful act statute concurrent? The answer, it is believed, must be in the negative. The new legislation seems not to have been construed by the Supreme Court of Kansas, except by inference. Thus, in Ruff v. Farley Machine Works Co.,[26] it was said:

"Since a cause of action for wrongful death did not survive the death of the wrongdoer plaintiffs could not bring an action against Jack Farley, [who was killed in the automobile collision in which the decedent lost his life] or the administrator of his estate. Wright v. Smith, 136 Kan. 205, 14 P.2d 640; Kelly v. Johnson, 147 Kan. 74, 75 P.2d 209, but see chapter 233, Laws, 1939, which seems to change this rule."

It is clear that the Supreme Court of Kansas, although conscious of the criticism which has been levelled against the view expressed by it in a long line of cases beginning with the McCarthy case, cited in footnote 23, has not seen fit to recede from its position. Thus, in Kelly v. Johnson, supra, it was stated that "variance in survival statutes has a material bearing on the question [whether recovery can be had against the estate of a deceased tort feasor], as does the question whether plaintiff seeks to recover for injuries to person or property or for wrongful death." The view announced in the Wright v. Smith case, supra, was reaffirmed. It was again pointed out that actions for wrongful death could not be maintained at common law and that liability arises from statute.

In the Kelly case, recovery was sought under the Kansas Workman's Compensation Act for reimbursement from the estate of the wrongdoer for the compensation which the former employer of the deceased had been compelled to pay. It was argued that the employer "because he was compelled to pay compensation to * * * [decedent's] widow * * * suffered * * [an] injury to his personal estate, and that

therefore a cause of action survived the wrongdoer's death". "Such a contention", said the court, "presupposes he had a cause of action against the wrongdoer." Pointing out that under the act, as it then existed, by virtue of accepting compensation, "the workmen's rights passed to the employer, all the employer had was a right to seek damages, *and, in this case those damages are for wrongful death*", (emphasis supplied), the court held that the trial court properly sustained a demurrer to the petition. In the instant case, while no recovery is sought under the Kansas Compensation Act, that act, it seems, rather than the Nebraska act, provides the only remedy which may be enforced in this court. But however that may be, the damages are for wrongful death; for even under the Nebraska act, § 48-118, the employer is "subrogated to the right of * * * the dependents against such third person * *." Under either case, therefore, the result is the same.

■ But coming back to the 1939 amendment to § 60-3201, some of the language used by the Supreme Court of Kansas in Wright v. Smith, supra, in construing that section prior to the amendment is apposite. Said the court [136 Kan. 205, 14 P.2d 641]: "By the express terms of R.S. 60-3201 a cause of action will survive the death of the party who in his lifetime would have been entitled to maintain it, and it will also survive the death of the party 'liable to the same,' for any of the following: (a) Mesne profits, (b) An injury to the person, (c) An injury to real or personal estate, (d) Deceit or fraud." Disposing briefly of (a), (c) and (d), the discussion continued: "* * * it is *stare decisis* that the right of revivor of an action for an injury to the person does not cover the case of a personal injury which causes the death of the injured person." An illustration of the applicability of § 60-3201 was set out in this language:

"If Armstrong had struck Wright with his fist, Wright would have a cause of action against Armstrong for injury to his person. And under R.S.

26.  151 Kan. 349, 350, 99 P.2d 789, 790.

60–3201 such a cause of action would survive the death of Wright if he had died of smallpox or of any ailment not at all related to the personal attack made on him by Armstrong. But where the injury to the person actually causes the death of the injured person the right of redress is given by R.S. 60–3203 exclusively."

Then followed a discussion of the Mc-Carthy case, heretofore alluded to, and the cases applying its rationale, after which the court said: "* * * (O)ur precedents running back for half a century cannot be ignored. Moreover, our Code has been revised twice since the McCarthy case was decided, and the Legislature has been content to let the law stand as this court has interpreted it during this long period."

A reasonable interpretation of the survival statute, as amended, it seems to this court, is to give the language used a literal construction. In that view a "cause of action * * * for death by wrongful act or omission, shall * * * survive; and the action may be brought notwithstanding the death of the person entitled [i. e., the personal representative of the deceased, seeking damages inuring to the exclusive benefit of the classes named in § 60–3203 or the one entitled, under § 60–3204, to maintain such action] or liable to the same [i. e., the one causing the death by wrongful act or omission]." Incidentally, that is the interpretation placed upon the amendment in a Law Review Article [27] cited by counsel for the plaintiff, the author expressing the view the amendment allows miantenance of an action for wrongful death against the estate of the wrongdoer but that "it is highly improbable that the court would make such a liberal interpretation of this language as to overturn a long line of decisions holding that when death results from the wrongful act the action is exclusively under section 60–3203."

At the risk of unnecessarily extending this, already too-long, opinion it should be stated the court has not overlooked plaintiffs' argument based upon the language of the Supreme Court of the United States in Mellon v. Goodyear,[28] and St. Louis Iron Mountain & Southern Ry. Co. v. Craft.[29] The Kansas Supreme Court applies the rule of the cited cases in suits brought under the Federal Employers' Liability Act; but, as indicated in the earlier part of this discussion, steadfastly adheres to its interpretation of the Kansas death by wrongful act statute. This court must do likewise.[30]

One other question should be noticed. Plaintiffs suggest, on the authority of Montgomery Ward & Co. v. Callahan [31] that how they are required to proceed and in whose name the action is to be filed, are procedural matters to be determined by the law of the forum. Admittedly, this court, somewhat like the Court of Appeals for the Second Circuit did in Cooper v. American Airlines,[32] having before it one suing in "a representative capacity," has applied "the same divining rod as * * * [is employed] under the doctrine of Erie R. Co. v. Tompkins" (see footnote 30). In the Montgomery Ward case Rule 17(c) was applicable. It, as the Court pointed out [127 F.2d 36] "provides that where an incompetent person does not have a duly appointed representative, he may maintain an action by his next friend or guardian ad litem." In the instant case, however, as in the Cooper case [149 F.2d 357], the "* * capacity to sue * * * [is to] be determined by the law of the state in which the district court is held * * *." Rule 17 (b). Being of the opinion that, under the law of Kansas, an Iowa administrator, as.

27. Vol. XVII No. 2, The Journal of the Bar Association of the State of Kansas, p. 258, "Damages For Personal Injury When Death Ensues," by Melvin C. Poland, now a member of the faculty of Washburn University School of Law.

28. 277 U.S. 335, 342, 48 S.Ct. 541, 72 L. Ed. 906.

29. 237 U.S. 648, 35 S.Ct. 704, 59 L.Ed. 1160.

30. Erie R. Co. v. Tomkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487; Mattson v. Central Electric & Gas Co., 8 Cir., 174 F.2d 215.

31. 10 Cir., 127 F.2d 32, 36.

32. 149 F.2d 355, 162 A.L.R. 318.

such, may not institute and maintain an action in Kansas under its death by wrongful act statute to recover damages for the benefit of the estate being administered by him in Iowa, the court has concluded that the motion to dismiss must be sustained. Order dismissing the action is this date being entered.